## CITY OF DALLAS V. RUSSELL E. SMITH ET AL.

No. 6928.   Decided July 21, 1937.
Rehearing overruled October 20, 1937.
(107 S. W., 2d Series, 872.)

*Hugh S. Grady, H. P. Kucera,* and *Eckford & McMahon,* all of Dallas, for plaintiff in error.

The operation of a hospital by a city is a governmental function and the city is not liable for the negligence of the employees in conducting the same or the treatment of the patients therein. To be governmental the act done must be essentially public and is to be distinguished from those which are proprietary or voluntarily assumed and intended for the private advantage and benefit of the locality and its inhabitants. White v. City of San Antonio, 94 Texas 313, 60 S. W. 426; Tompkins v. Williams, 62 S. W. (2d) 70; Benton v. Boston City Hospital, 140 Mass. 13, 1 N. E. 836; City of Richmond v. Long, 17 Grat. (Va.) 378, 94 Am. Dec. 461.

*George S. Atkinson, Allen & Allen,* and *E. G. Moseley,* all of Dallas, for defendant in error.

It was error to hold that the City of Dallas was operating and maintaining the Parkland Hospital under the general powers of health regulation, or its general power as an agency of the State, or its police power. Tarrant County Traction Co. v. Bradshaw, 185 S. W. 951; City of Dallas v. Western Electric Co., 83 Texas 243; Lober v. Kansas City, (Mo.) 74 S. W. (2d) 815; Johnson v. City of Chicago, (Ill.) 101 N. E. 960.

*J. Hardy Neel* and *(Mack) W. M. Taylor,* Assistants County Attorney for Dallas County, both of Dallas, filed brief as amici curiae.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The district court sustained a general demurrer to the petition of Russell E. Smith and wife, defendants in error, who sued the City of Dallas, plaintiff in error, for damages on account of the death of their daughter, alleged to have been caused by the negligence of the superintendent and other employees of the city in Parkland Hospital, owned and operated by the city, to which hospital the child, suffering from gunshot wounds, was taken for examination and treatment. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause. 78 S. W. (2d) 301.

■ The allegations with respect to the city's ownership and operation of the hospital are that: "The City of Dallas owned and operated, or was interested in the operation of a certain hospital located with the corporate limits of said city, under the name of Parkland Hospital, which hospital was operated by the City of Dallas for profit; that it made a specific charge to all patients entering the same for the purpose of medical treatment and hospital service. That a specific fee or charge was made for the use of the rooms and wards therein and for the use of every other facility at such place and used in connection with the treatment of patients." In another paragraph it is alleged in the alternative that: "If all patients treated at such hospital during such time and prior thereto were not paying patients, then plaintiffs say that a specific charge was made against each and every patient and, upon a showing of inability to pay by any patient, the charges were not pressed or prosecuted to collection." The decision of the Court of Civil Appeals that the petition sufficiently states a cause of action as against general demurrer is based upon its conclusion that "the duty the representatives of the Parkland Hospital were called upon to perform, as stated in the petition, was not a governmental function but a service voluntarily assumed by the hospital for the benefit of the locality where situated." With this conclusion we can not agree. It is our opinion, assuming the truth of all of the facts alleged in the petition and indulging every reasonable intendment arising upon the petition, that the city in the maintenance and operation of the hospital was exercising a governmental power and was not acting in its proprietary capacity.

■ The petition does not show by what authority or under what law the city established and operated the hospital. By subdivisions 1 to 4 inclusive of Article 1015 of the Revised Civil Statutes, which article is a part of the statutes relating generally

to cities and towns, the governing bodies of cities and towns are given the power to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease, to make regulations to prevent the introduction or spread of contagious diseases, to cooperate with the county in which the municipality is situated in making such improvements as may be deemed necessary to improve the public health and to promote efficient sanitary regulations, and to erect or establish one or more hospitals and control and regulate the same, and to prohibit or permit and regulate the establishment of private hospitals. By subdivision 43 of this article the governing bodies of cities are given the power to appropriate so much of the revenue of the city as may be deemed expedient for the purpose, among others, of erecting and conducting city hospitals.

Article 1175, which enumerates the powers of cities adopting or amending their charters under the so-called Home Rule Amendment to the Constitution, in its 28th subdivision, gives such cities the power to provide for a health department and the establishment of rules and regulations protecting the health of the city and the establishment of quarantine stations, emergency hospitals and hospitals.

There is no suggestion in either of the articles above referred to, or elsewhere in the statutes relating to the powers of cities and their governing bodies, that cities are authorized to establish or maintain hospitals as business institutions or for revenue raising purposes. In both of the articles the authority is conferred in connection with the giving of other powers relating to the public health.

By Articles 4478 to 4494 of the Revised Civil Statutes of 1925, being Chapter 5 of Title 71, "Public Health," elaborate provision is made for the establishing and maintenance of county hospitals, and by Article 4492 the county is permitted to cooperate with and join a city having a population of ten thousand persons or more in the establishment, building, equipment and maintenance of a hospital in the city, the management to be jointly by the county and the city. According to express provisions of Article 4486, which we construe to apply to hospitals operated jointly by the county and the city as well as to those operated solely by the county, no patient is permitted to pay for his maintenance in the hospital a greater sum than the average per capita cost of maintenance therein, including reasonable allowance for the interest on the cost of the hospital. A hospital established or maintained under this law can not be operated for profit. It is to be operated, as the chapter and title of which the chapter is a part plainly show, for an important

governmental purpose, the preservation and promotion of the health of the public. To that end it is a part of the elaborate plan of the entire title.

■ The State in its acts for the health of its citizens exercises its police power and this power it may in proper extent delegate to cities. Associate Justice GREENWOOD, in City of New Braunfels v. Waldschmidt, 109 Texas 302, 309, 207 S. W. 303, said: "No one would question that the police power of the State may be delegated for appropriate purposes to the various municipalities, and that it may be validly exercised by such municipalities for the protection of the health of their residents."

The power thus delegated to cities remains after its delegation police power and being such, it is essentially governmental, police power being defined as "a grant of authority from the people to their governmental agencies for the protection of the health, the safety, the comfort and the welfare of the public." Spann v. City of Dallas, 111 Texas 350, 355, 235 S. W. 513; 19 A. L. R. 1387; 9 Tex. Jur., p. 502, Sec. 74. A city in exercising police powers delegated to it is exerting the powers of the government of the State within the limits of the city. Peck v. City of Austin, 22 Texas 261, 263, 73 Am. Dec. 261. It seems, therefore, necessarily to follow that the State by the enactment of the statutes above cited, giving to cities the power to make rules and regulations to protect public health and to prevent the spread of disease and do all acts necessary for the promotion of health and the suppression of disease, including the establishment and maintenance of hospitals, has delegated to the city part of its police powers and that cities in exerting the power thus delegated act in a governmental capacity and perform functions and duties which can not be regarded as proprietary or as intended for the private advantage of the municipality and its inhabitants.

That cities in exercising the powers delegated to them to protect and preserve the public health are acting for all the people and not solely or even primarily for the benefit of those residing within the corporate limits is further manifested by the fact that in matters pertaining to the public health cities are not left free to act as their local officers may direct or to make and enforce such regulations as their local officers may deem best for the residents of the municipality. There is no unqualified delegation by the State to the cities of the police power in so far as it pertains to health. The statutes reserve to the State and to the State Board of Health a large measure of control and direction.

By Article 4425 of the Revised Civil Statutes every incorporated city or town is required to elect or appoint a city health officer. According to the provisions of Article 4430 the city health officer must perform not only such duties as may be required of him by the city ordinances, but also the duties imposed upon him by general law and such others as may be prescribed for him under the directions, rules and regulations of the State Board of Health. He also is required by the same article to aid and assist the State Board of Health in quarantine, disease prevention and suppression and sanitation within his jurisdiction, making such reports as the State Board of Health may prescribe. The city health officer for failure to perform properly the duties of his office is subject to removal at the relation of the State Board of Health. Article 4431. By Articles 4434 and 4437 cities and counties wherein cities are situated are authorized to cooperate in establishing and maintaining hospitals. In matters of quarantine the medical officers of chartered cities and towns may perform the duties granted or commanded in their several charters, but must be amenable and obedient to the rules prescribed by the State Board of Health. Article 4460. The sanitary code, Article 4477, requires city and county officers to keep careful records of all cases of contagious diseases and to make reports of them to the State Board of Health and prescribes elaborate rules and regulations to be enforced by city health officers for the protection of public health and the prevention of the spread of contagious diseases.

■ Because of the very nature of the power to make provision for the public health and its importance to all the people of the State, and because in exercising such power the cities are required to administer and enforce and do administer and enforce the general laws and the general policy of the State, such power in our opinion falls within that class described by Judge STAYTON in City of Galveston v. Posnainsky, 62 Texas 118, 127, 50 Am. Rep. 574, as follows:

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the State,—they should be deemed agencies of the State, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to sued only when the State, by statute, declares they may be."

The conclusions above expressed are supported by the great weight of authority, including the decisions of the courts of this State. DILLON'S statement of the general rule is: "The power or even duty on the part of a municipal corporation to make provision for the public health and for the care of the sick and destitute, appertains to it in its governmental or public, and not in its corporate, or as it is sometimes called, private capacity." Applying the general rule to the particular question here presented, he says: "And therefore where a city, under its charter, and the general laws of the State enacted to prevent the spread of contagious diseases, establishes a hospital it is not responsible to persons injured by reason of the misconduct of its agents and employees therein." Dillon's Municipal Corporations, (5th ed.) Vol. 4, p. 2986, Sec. 1661. The text is supported by many authorities, including: Tollefson v. Ottawa, 228 Ill. 134, 81 N. E. 823, 11 L. R. A. (N. S.) 990; Richmond v. Long's Administrator, 17 Grat. (Va.) 375, 94 Am. Dec. 461; Benton v. Boston City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436.

McQUILLIN'S statement of the rule, supported by authorities, among them being City of Wichita Falls v. Robison, 121 Texas 133, 46 S. W. (2d) 965, hereinafter discussed, is as follows: "It is well settled that a municipality is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health and to care for the sick and destitute." To show the reason for the rule he quotes from Chafor v. Long Beach, 174 Cal. 478, 163 Pac. 670, 672, L. R. A. 1917E, 685, Ann. Cas. 1918D, 106, as follows: "Under the theory of the common law, that the municipality is protected from liability only while exercising the delegated functions of sovereignty, the governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring for the poor and the education of the young." McQUILLIN in the same section says further: "There are some duties the nature of which as governmental is too well settled to be disputed, such as the establishment and maintenance of schools, hospitals, poor houses, fire departments, police departments, jails, workhouses, and police stations, and the like. In fact, duties connected with the preservation of the peace or health, or the prevention of the destruction of property by fire are all governmental duties, without question, and hence there is no municipal liability for torts in connection therewith, or at least not under ordinary circumstances." McQuillin's Municipal Corporations, (2d ed.) Revised Volume 6, pp. 1058-1061,

Sec. 2796. The following cases, cited among others in support of the text last quoted, hold that the establishment and maintenance of hospitals is a governmental function and that a city is not liable for injury caused by the negligence of its employees in the operation of the city's hospital. Young v. City of Worcester, 253 Mass. 481, 149 N. E. 204, Zummo v. Kansas City, 285 Mo. 222, 225 S. W. 934. Other authorities so holding are: Wallwork v. City of Nashville, 147 Tenn. 681, 251 S. W. 775; Twyman's Administrator v. Board of Councilmen of Frankfort, 117 Ky. 518, 78 S. W. 446, 64 L. R. A. 572, 4 Ann. Cas. 622; Browder v. City of Henderson, 182 Ky. 771, 207 S. W. 479; Van Pelt v. City of Louisville, 257 Ky. 256, 77 S. W. (2d) 942; Watson v. City of Atlanta, 136 Ga. 370, 71 S. E. 664; Frost v. City of Topeka, 98 Kan. 636, 161 Pac. 936, L. R. A. 1917C, 429; Murtaugh v. City of St. Louis, 44 Mo. 479; Nicholson v. City of Detroit, 129 Mich. 246, 88 N. W. 695, 56 L. R. A. 601; Note 49 A. L. R. 379 and following; 43 C. J., p. 971, Sec. 1749, p. 1169, Sec. 1934.

The leading Texas decision touching the question under consideration is City of Wichita Falls v. Robison, 121 Texas 133, 46 S. W. (2d) 965. Robison, employed by the city in its sanitary department, suffered injury to his eyes from a disinfectant powder furnished to him by the city to be distributed and deposited in the performance of his duties. The city's defense was that the sanitation of the city was a governmental function and that the city in exercising such power was not liable for injuries inflicted through the negligence of its officers and employees. The Court expressed the opinion that "the question of the city's liability for such injuries must be determined not by the particular department in which he is employed, but turns rather upon the question as to whether the nature of the work being done by him comes within the purview of the performance of a governmental function by the city," and affirmed the judgment of the trial court, which sustained a general demurrer to the plaintiff's petition, after reaching the conclusion that it affirmatively appeared from the plaintiff's petition that he was engaged in a governmental function at the time of his injury.

The Robison case was followed in Ballard v. City of Fort Worth, 62 S. W. (2d) 594 (application for writ of error refused), in which the plaintiff sued for injuries suffered while at work in one of the pipes of the city's sanitary sewer system. Justice CONNER, after citing and quoting from the Robison case, said: "If the rule of exemption under consideration is broad enough to include a mere chemical substance used in con-

nection with the operation of a sewer for sanitary purposes, no sound reason exists for holding that the sewer system itself is beyond its scope."

In White v. City of San Antonio, 94 Texas 313, 60 S. W. 426, it was held that the city was not liable to the plaintiff for acts of city officials in taking possession of plaintiff's hotel and in placing and detaining therein certain persons suspected of having been exposed to the infection of yellow fever, because the enforcement of quarantine regulations is a matter of vital interest to the public in general and peculiarly a public function and, when devolved upon a city, belongs to "that class of duties for which a city is not answerable when, through the negligence or misconduct of its officers in their performance, damages are inflicted."

The plaintiff, in Whitfield v. City of Paris, 84 Texas 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69, sued the city to recover for injuries inflicted upon her by a policeman shooting at an unmuzzled dog in the attempted enforcement of an ordinance forbidding dogs to run at large. Judge TARLTON, who wrote the adopted opinion holding that the city was not liable, said: "Where a city acts as the agent of the State, it becomes the representative of sovereignty. It is not acting in the management of its corporate concerns, but in the interest of the public and as the guardian of the health, peace, convenience and welfare of the public. Under such circumstances, it is not liable for the acts of its officers or employees engaged in the execution of its ordinances."

It was held in Tompkins v. Williams, (Com. App.) 62 S. W. (2d) 70, that the City of Dallas was not liable to the plaintiff who was struck by a motorcycle ridden by a member of the police department of the city when engaged in the performance of his duties as a traffic policeman, because, according to the pleadings and the undisputed evidence, the injuries suffered by the plaintiff resulted from "an act of a city policeman while engaged in discharging duties pertaining purely to governmental functions of such city." The opinion, written by Justice CRITZ, then Commissioner, cites, among other authorities, the Robison case and the Whitfield case, supra.

Similarly, Rusher v. City of Dallas, 83 Texas 151, 18 S. W. 333, held the city not liable for damages alleged to have been caused by the illegal arrest of plaintiff by a police officer of the city.

It is settled by a number of decisions that a city is not liable to one injured by the negligence of an employee of the fire department of the city engaged in the performance of his duties. Barnes v. City of Waco, 262 S. W. 1081; Adkinson v. City of Port Arthur, 293 S. W. 191; Connally v. City of Waco, 53 S. W. (2d) 313; Shanewerk v. City of Fort Worth, 11 Texas Civ. App. 271, 32 S. W. 918; Hooper v. City of Childress, 34 S. W. (2d) 907; King v. City of San Angelo, 66 S. W. (2d) 418. Applications for writs of error were refused in the first three of the above cited cases.

If cities are exercising governmental powers when engaged in sanitation, the prevention of crime, the enforcement of traffic laws and ordinances, the prevention of fires and the enforcement of quarantine regulations, as the foregoing authorities hold, then certainly they are exercising governmental functions when they maintain and operate hospitals.

■ Defendants in error insist that the maintenance of a city hospital is proprietary rather than governmental, because it is primarily intended for the benefit of those residing in the city, citing authorities which contain statements to the effect that a power or function is proprietary rather than governmental when it is conferred upon the city for the peculiar advantage of its inhabitants rather than in the interest of the public at large. This test may be useful when the nature of the duty performed or power exercised is not essentially governmental in its nature but it has no application to a power or duty like that here involved, which, as has been said, pertains to the police power and is in its very nature governmental. Such test has been disregarded in the decisions holding that cities are exercising governmental powers in enforcing their local ordinances for public safety and in the prevention of fires. The ordinances are intended and the fire departments are maintained primarily for the benefit of the inhabitants of the city.

Defendants in error take the position that the city was not acting in a governmental capacity in the operation of the hospital because it was operated for profit. The allegations in the petition are: " * * * which said hospital was operated by the City of Dallas for profit; that it made a specific charge to all patients entering the same for the purpose of medical treatment and hospital service." These allegations are followed in another paragraph by the allegation in the alternative that if all patients were not paying patients, then a specific charge was made against each patient and upon a showing of inability by any patient to pay, the charges were not pressed or prosecuted to collection. We are inclined to believe that the particular alle-

gations as to the making of specific charges to all patients are intended to limit and explain the general allegation that the hospital was operated for profit, that is, that the pleader intends to say in substance that the hospital was operated for profit in that a specific charge was made to all patients. The mere making of charges to all patients would not constitute operation for profit and the allegation that the city charged all patients entering its hospital is not to be construed as an allegation that the city operated the hospital for its profit or pecuniary advantage. Watson v. City of Atlanta, 136 Ga. 370, 71 S. E. 664. The fact that a hospital operated as a charitable institution receives pay from some or most of its patients does not change its status as a charitable institution. Santa Rosa Infirmary v. City of San Antonio, (Com. App.) 259 S. W. 926; Baylor University v. Boyd, 18 S. W. (2d) 700; Enell v. Baptist Hospital, 45 S. W. (2d) 395 (application for writ of error refused); Steele v. St. Joseph's Hospital, 60 S. W. (2d) 1083 (application for writ of error refused); 5 R. C. L., p. 377, Sec. 121. Such institution ceases to be purely charitable when it makes private gain or corporate profit, that is, when an individual owner reaps a profit or when distributable earnings accrue to a corporation as owner. Santa Rosa Infirmary v. City of San Antonio, (Com. App.) 259 S. W. 926, 935. On the same principle, the character of a city's operation of its hospital is not changed from governmental to proprietary by the mere fact that it makes charges or receives pay. Browder v. City of Henderson, 182 Ky. 771, 207 S. W. 479; Watson v. City of Atlanta, 136 Ga. 370, 71 S. E. 664; Wallwork v. City of Nashville, 147 Tenn. 681, 251 S. W. 775; McQuillin's Municipal Corporations, (2d ed.) Revised Volume 6, p. 1170, Sec. 2840. "If a service be governmental it does not become private because a charge is made for it." Brush v. Commissioner of Internal Revenue, 300 U. S. 352, 81 L. Ed. 443, 450, 57 Sup. Ct. 495, 108 A. L. R. 1428. Amounts collected from patients who are able to pay may serve to contribute to the more effectual performance of the hospital's important public duties.

■ But resolving all doubts in favor of the petition, and giving to its general allegation that the city operated the hospital for profit the construction that the hospital was operated for revenue purposes or for the city's profit in its private or proprietary capacity, we are confronted with the question of ultra vires. If the hospital was maintained and operated in cooperation with the County of Dallas under Articles 4478 to 4494 of the Revised Civil Statutes, operation for profit was expressly forbidden by Article 4486. As has been stated, the statutes relating generally

to cities and Article 1175 enumerating the powers of home rule cities authorize cities in general terms to do all things necessary or expedient for the promotion of health and to establish and maintain hospitals, with no suggestion that they may establish or maintain hospitals as business institutions or for revenue purposes. We think that cities are given the power to establish and operate hospitals in order that they may efficiently act as agents of the public in the promotion of the public health and not to enable them to exploit for private and corporate gain the misfortunes of the physically afflicted, and that the statutes do not authorize them to establish or maintain hospitals for revenue or for corporate gain.

It was held in Tollefson v. Ottawa, 228 Ill. 137, 81 N. E. 823, 11 L. R. A. (N. S.) 990, that the trial court did not err in sustaining a general demurrer to the petition of a plaintiff who sued as administratrix for damages on account of the death of a patient caused by negligence of employees in the city's hospital. The petition alleged that the hospital was maintained for revenue and profit to the city. The hospital was constructed and operated under a statute giving to cities the power to erect and establish hospitals, and control and regulate the same, and to do all acts necessary or expedient for the promotion of health and the suppression of disease. The court construed the statute as authorizing the city to maintain a hospital either as a charity or as a means for the promotion of the general health of all of its residents and the suppression of disease among the inhabitants, and for no other purposes, and said with reference to the allegation that the hospital was operated for revenue and profit: "The city did not possess the power, in its private or proprietary capacity, to engage in the business of conducting a hospital for revenue. If the municipal authorities have unlawfully entered upon a course of that character the city can not be made liable for negligence on their part or on the part of those employed by them in carrying out that purpose." McQUILLIN, citing Tollefson v. Ottawa, says: "If a municipality has power to, and does, maintain a hospital for revenue, there is no doubt but that it would be liable for the torts of persons employed about the hospital, but if it conducts the hospital for revenue but without power to do so, it is not liable." McQuillin's Municipal Corporations, (2d ed.) Revised Volume 6, p. 1170, Sec. 2840.

In our opinion the operation of the city's hospital for revenue is not merely the doing of a lawful or authorized act in an unlawful manner, but is a business so essentially different from its operation as a public institution in the promotion of the health of the people that it is wholly beyond the powers of the mu-

nicipality. The act of the city officials in operating the hospital for such purpose being ultra vires, no liability arises against the city if a tort is committed in connection therewith. King v. City of San Angelo, 66 S. W. (2d) 418; 19 R. C. L., p. 1138, Sec. 414; McQuillin's Municipal Corporations, (2d ed.) Revised Volume 6, pp. 1096-1099, Sec. 2808; Dillon's Municipal Corporations, (5th ed.) Vol. 4, pp. 2867-2868, Sec. 1647.

■ The petition alleges as one of the acts of negligence proximately causing the death of the plaintiffs' child that the city was negligent in employing and placing in charge of the hospital one who was not fully qualified and capable of administering the proper kind of treatment to emergency patients. This allegation does not take the case out of the rule which exempts cities from liability when exercising governmental powers. The city officials in selecting the superintendent of the hospital were acting as agents of the general public and the doctrine of respondeat superior does not apply. Rusher v. City of Dallas, 83 Texas 151, 18 S. W. 331; Shanewerk v. City of Fort Worth, 11 Texas Civ. App. 271, 32 S. W. 918; Hooper v. City of Childress, 34 S. W. (2d) 907; McIllhenny v. City of Wilmington, 127 N. C. 146, 37 S. E. 185, 50 L. R. A. 470; Craig v. City of Charleston, 180 Ill. 154, 54 N. E. 184; McQuillin's Municipal Corporations, (2d ed.) Revised Volume 6, p. 1163, Sec. 2836.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court July 21, 1937.

Rehearing overruled October 20, 1937.