ALLEN B. CROW V. CITY OF SAN ANTONIO

No. A-6123. Decided April 24, 1957.
Rehearing overruled May 29, 1957.
(301 S.W. 2d Series 628.)

*Lieck & Lieck* and *Charles Lieck, Jr.,* all of San Antonio, for petitioner.

*Carlos C. Cadena,* City Attorney for the City of San Antonio, *Crawford B. Reeder,* Assistant City Attorney, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit for damages resulting from an injury sustained by petitioner on June 6, 1947, when a motorcycle ridden by petitioner struck a rope stretched across Taylor Street at its junction with Fourth Avenue, both being public streets in the City of San Antonio, Texas.

The cause was tried to a jury and the jury answered favorably to the plaintiff, Crow, the special issues submitted. The City defendant made a motion for judgment non obstante veredicto, which the trial court granted, and entered judgment that Allen B. Crow take nothing. Plaintiff, Crow, appealed to the Court of Civil Appeals at San Antonio. That Court affirmed the judgment of the trial court. 294 S.W. 2d 899. We are not in agreement with the action of the Court of Civil Appeals.

Taylor Street south of Fourth Avenue runs in a general northwest direction and is 36½ feet wide. At the intersection of Fourth Avenue and Taylor Street, Fourth Avenue runs east and west. North of Fourth Avenue Taylor Street runs north and south and is 39½ feet wide. The entrance of Taylor into Fourth Street from the south is not directly south of the entrance of Taylor into Fourth from the north. The differences in the direction and width of Taylor at Fourth results in the crossing being an offset crossing; i.e., when driving on Taylor across Fourth one cannot continue straight ahead, but must bear to the right as he crosses Fourth in order to proceed north on Taylor. This intersection has traffic control light. On the day in question, the City had closed Taylor north of Fourth Avenue in order to permit children attending a Bible class conducted in buildings on the east and west side of Taylor, and immediately north of Fourth, to cross and recross Taylor without any danger of vehicular traffic. Plaintiff, coming north on Taylor, while driving at a moderate rate of speed, approached the intersection in question. The traffic light on Taylor was green so plaintiff proceeded across the street and ran into the rope and was injured.

The City claims it is not liable because it stretched the rope across the street in order to regulate traffic, (which was a governmental function), and to protect the children who were crossing and recrossing Taylor in order to attend their Bible classes. The City claims further that neither plaintiff nor anyone acting for him had given notice of his injury to the Mayor within the time required, in accordance with the provisions of the charter of the City of San Antonio. Plaintiff contends that the City is liable first, because the City acted in a proprietary capacity, and second, the rope constituted a dangerous obstruction of Taylor Street, and the City did not have warning signs to notify the traveling public on Taylor Street that Taylor Street was closed.

The findings of the jury in answer to special issues were:

1.   The Mayor received written notice of the accident within 20 days after its occurrence.

2.   The blocking of the street in question was duly authorized by the Mayor and Commissioners, acting for the City.

3.   In stretching the rope across Taylor Street, the firemen failed to place sufficient warning signs on said rope, which failure constituted negligence which proximately cause plaintiff's injury.

4.   The City was negligent in blocking the street with such rope, and such negligence was a proximate cause of plaintiff's injury.

5.   The City's failure to keep a person at the scene to warn traffic of the presence of the rope constituted negligence which was a proximate cause of the plaintiff's injury.

6.   Plaintiff was not guilty of contributory negligence.

We agree with the holding of the Court of Civil Appeals on the question of notice to the Mayor of the happening of the injury, and we see no occasion for further elaboration on this point.

■ We disagree with the Court of Civil Appeals on the question of the liability of the City for the placing of the rope across Taylor Street so as to close it to vehicular traffic. In the case of Kling v. City of Austin, Texas Civ. App., 1933, 62 S.W. 2d 689, 690, no writ history, plaintiff Kling sued the City of Austin for injury suffered by him as a result of a collision with a fire plug located in the driveway across the parkway portion of a public street in the City of Austin. At the end of the testimony, the trial court withdrew the case from the jury and instructed a verdict for the City. Upon appeal, the Court of Civil Appeals reversed and remanded the cause. The Court stated that the furnishing of fire protection is a governmental function in the performance of which the City incurs no tortious legal liability. This is true "* * * whether the dereliction consists in construction, maintenance, or operation of the instrumentalities employed by the city in this regard. * * *" However, the Court held that the above rule did not apply in the case at hand, saying "* * * the liability of the city generally for negligent performance or nonperformance of its duty to maintain its public streets in reasonably safe condition for ordinary use both

vehicular and pedestrian is conceded. The precise question here is whether breach of this duty is rendered nonactionable where the unsafe condition is caused by either the *improper location of a governmental function instrumentality* or the failure to properly guard such instrumentality so as to render it reasonably safe. * * * ''(Emphasis added). The Court approved the law as declared in McFarland v. City of McCaysville, 39 Ga. App. 739, 148 S.E. 421, 422 and Augusta v. Cleveland, 148 Ga. 734, 98 S.W. 345, 347 by the Supreme Court of Georgia. In the latter case, the Georgia Supreme Court recognizes the general rule of nonliability of a city for acts done in the performance of a governmental function, but proceeds to say that if a city negligently or tortiously allows obstructions to remain in its streets or sidewalks and a citizen in the exercise of due care is injured in consequence of such act of negligence on the part of the city there can be a recovery therefor against the city.

Although the Kling case has no writ history it was quoted from as an authority to sustain the court's judgment in the case of City of Port Arthur v. Wallace, 1943, 141 Texas 201, 171 S.W. 2d 480.

The case of Baker v. City of Waco, Texas Civ. App., 1939, 129 S.W. 2d 499, 501, no writ history, was a suit by a widow for the death of her husband in a collision of his car with a police car of the city. Plaintiff alleged that the failure of the city to have the traffic light flashing at the fatal intersection was negligence on the part of the city. Judgment of the trial court for the city was affirmed by the Court of Civil Appeals. The Court of Civil Appeals after recognizing that the right of a city to establish and operate traffic signals is a governmental function, says: "* * * When a city attempts to exercise its governmental functions in controlling traffic on a street and in such attempt uses means which constitute a dangerous physical obstruction thereon or therein, it has been held that it has committed an affirmative wrong and that an action for damages for injuries resulting therefrom may be maintained, * * *" citing authorities.

The case of Parson v. Texas City, Texas Civ. App., 1953, 259 S.W. 2d 333, wr. ref., was a suit against the city for damages sustained in a collision of two cars at a street intersection. It was alleged that the collision was caused by the negligence of the city in not keeping a traffic light at the intersection in good repair with the result that the light showed green

simultaneously on each of the intersecting streets. In affirming a summary judgment for the city, the Court said:

"(3) When a city, in the exercise of its governmental function of controlling traffic, uses means that constitute a dangerous physical obstruction of the street, it commits an affirmative wrong for which recovery will be allowed. Baker v. City of Waco, [129 S.W. 2d 499]; Murphy v. Incorporated Village of Farmingsdale, 252 App. Div. 327, 299 N.Y.S. 586; Mayor and Aldermen of City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713, 39 A.L.R. 777; Town of Hobart v. Casbon, 81 Ind. App. 24, 142 N.E. 138. * * *"

See also 39 Texas Jur. 658, Sec. 104; McQuillin on Municipal Corporations, 3rd. Ed., Vol. 19, p. 193, Sec. 54.62; Id., p. 360, Sec. 54.99; 63 C.J.S., p. 108, Sec. 795; Id., p. 125, Sec. 805; Id., pp. 127-136, Sec. 807; Id., p. 178, Sec. 838.

■ The City contends there is no pleading by plaintiff that the rope stretched across the street constituted a dangerous obstruction. We find pleadings of facts that would make the rope a dangerous obstruction by the manner and method of its installation. There are also pleadings that the City failed to place proper warning signs or devices to apprise the traveling public of the existence of the rope. Plaintiff specifically pleaded "* * * that in addition to the defendant failing to place a proper warning of the presence of said rope, said rope created an obstruction or a dangerous hazard due to the difficulty to the ordinary observer being able to notice."

The findings of the jury in this case and which are supported by the evidence are such that it can be determined that the rope in question in the manner and method of its use at the place constituted a dangerous obstruction in the street. The evidence was conflicting on this issue, but the jury resolved that conflict in favor of the plaintiff. The jury findings convicted the City of negligence which negligence was a proximate cause of the injury suffered by the plaintiff. There was evidence in this case that the rope was a small rope about one-fourth of an inch in diameter; that the height at which it was stretched made it difficult for one using Taylor Street to see the stretched rope; that the rope was bare and there were no signs of warning on the rope; that no policeman or watchman was present to warn approaching traffic of the presence of the rope, that each end of the rope was attached to objects outside the paved area, thus giving no notice of the existence of the rope; that

the rope was difficult to see by other persons traveling along Taylor Street at or about the same time; and that a friend of the plaintiff who worked for the plaintiff and who was riding a motorcycle shortly after the accident could not see the rope until upon it, and this friend also came close to being dragged off his motorcycle. The evidence above cited and other evidence in the record sustain the jury findings whereby the City was convicted of negligence in blocking the street with the rope and also show the rope to be a dangreous obstruction in Taylor Street at the time. The trial court erred in rendering judgment non obstante veredicto.

■ Having concluded that the trial court was in error in rendering judgment non obstante veredicto, and there being no cross-assignments of error by the City presenting prejudicial error committed against it over its objection upon the trial of the case, it becomes our duty to render judgment upon the verdict of the jury. Le Master v. Fort Worth Transit Company, 1942, 138 Texas 512, 160 S.W. 2d 224; Dilley v. City of Houston, 1949, 148 Texas 191, 222 S.W. 2d 992; City of Houston v. Lurie, 1949, 148 Texas 391, 224 S.W. 2d 871, 14 A.L.R. 2d 61; Sanders v. Harder, 1950, 148 Texas 593, 227 S.W. 2d 206; De Winne v. Allen, 1955, 154 Texas 316, 277 S.W. 2d 95.

Judgments of both courts below are hereby reversed and judgment is here rendered that the plaintiff, Allen B. Crow, recover of and from the City of San Antonio his damages in the sum of $17,000.00 as found by the jury, plus the further sum of $345.00 stipulated expenses incurred by plaintiff as reasonable and necessary treatment for his injuries, together with all costs.

Opinion delivered April 24, 1957.

MR. JUSTICE GARWOOD, dissenting.

But for our recent approval of the decision of the Fort Worth Court of Civil Appeals in Parson v. Texas City, (1953), 259 S.W. 2d 333, I should have withheld this dissent as academic in the light of City of Houston v. Shilling, (1951) 150 Texas 387, 240 S.W. 2d 1010, 26 A.L.R. 2d 935. In the latter, and over a dissent with appropriate objections, we in effect served notice that the doctrine of city immunity from the consequences of exercising governmental functions was obnoxious to "the present tendency" and would thus be treated in somewhat the same manner as we treat the defense of an insurance company

under a policy provision that is not altogether clear in its favor. See 240 S.W. 2d 1012 (syl. No. 3) and corresponding portion of the dissent at p. 1015, 2nd col. But just two years later we approved the Parson decision, in which the Court of Civil Appeals, over a dissent, held immunity to exist where the city maintained (for several days) conflicting "Go" signals at a street intersection, thereby inviting the automobile collision out of which the suit arose.

Having already held as far back as 1943 in City of Port Arthur v. Wallace, 141 Texas 201, 171 S.W. 2d 480, that a city's proprietary concern with the condition of its streets rendered it liable because some bumps in the pavement were found to have contributed to a collision between a city fire truck and the plaintiff's automobile, to hold in 1953 that a formal signal device inviting collisions has nothing to do with any proprietary function concerning the streets, does not indicate a very vigorous application of the "present tendency" proclaimed in the 1951 Shilling opinion. So the last nail in the coffin of governmental action immunity seems not yet to have been driven, unless the instant decision drives it.

To be sure, the Parson opinion does use the language relied on in the instant opinion to the effect that immunity might have been denied if, instead of the conflicting signals, there had been some sort of physical obstacle in the street. But quite obviously that language was unnecessary to the decision, which went in favor of immunity, and our "refusal" of the writ of error can make it no less *dictum* than it previously was.

Now the instant decision purports to take both the dictum and the holding, add to them the actual holding of the Court of Civil Appeals in Kling v. City of Austin, 62 S.W. 2d 689, and comes out with what is apparently to be the rule henceforward. The latter is that, pretermitting the alleged cases of "nuisance" that come up from time to time (see Gotcher v. City of Farmersville, 137 Texas 12, 151 S.W. 2d 565; Parson case, supra, 259 S.W. 2d pp. 334 *et seq.*) but remain quite mysterious, governmental immunity may extend into the streets but not to physical obstacles therein, these being necessarily and always a matter of the proprietary function of maintaining streets.

This is undoubtedly what the instant doctrine means, and the Georgia cases cited by the court confirm that meaning. I think everyone would admit that if maintaing streets were considered a governmental function (as it is under the common

law of many of the oldest and most respected jurisdictions) the instant decision, the Kling case and the Georgia decisions would have resulted differently. In other words, our admitted source of the street obstacle doctrine is the concept of private or proprietary character of street maintenance. This being so, it seems that, logically speaking, no proprietary duty of the wide breadth claimed to exist can exist. The logical scope of any duty not to place obstacles cannot extend beyond those which arise out of the building or maintenance of the streets. There is no such idea as the "operation" of streets, these being passive in character and merely the place on which other things are operated. The other city functions concerning streets, such as policing them and keeping them in sanitary condition, are admittedly something quite different from building and maintenance and are clearly governmental.

Obviously there is nothing about the mere idea of an obstacle that would necessarily keep activities associated with it from being governmental or make them necessarily proprietary. The placing of walls or other obstacles around the city jail to prevent the escape of prisoners *and* to prevent the public from getting too close to the prisoners is clearly a governmental function. The placing of an obstacle for a governmental purpose, whether at the jail or in a street, is part of the governmental activity sought to be thereby exercised.

A rule, which says in effect that the city has a general proprietary duty to keep the streets clear of all dangerous obstacles, will almost necessarily lead us well beyond where we now think we are going. For example, when the case arises of a garbage truck or fire wagon that dangerously blocks a narrow street in a negligent performance of the governmental function of public hygiene or fire protection, will we not be compelled henceforward to hold that no immunity exists, although, if the same case were now before us instead of the instant one, we would probably hold the contrary? Certainly, if there is a general proprietary duty to keep the streets clear, we cannot say that there is a substantial difference between an obstacle consisting of a vehicle and one consisting of a rope, once we admit —or the jury chooses to find—that both are dangerous in the particular case.

Returning to the traffic-light case of Parson v. Texas City, under the rule now adopted we will have what is to my mind the rather indefensible situation of leaving a city immune where it invites collisions by means of defective signals physically

located on the road, and yet denying immunity where it places in the middle of the road a traffic sign which a motorist, who collides with it, may convince the jury to have been deceptively wide. Surely to place a regular traffic signal in the middle of the road is no less exclusively a governmental act than to place one at the side of the road. Nor does the fact that the motorist collided with the signal itself in the one case but not in the other have any bearing on whether governmental or proprietary functions were involved.

The more logical rule and one that appears to me less prolific of peculiar results is that dangerous obstacles arising out of the function of the city to build and maintain streets (or other proprietary functions) are not subject to immunity while those arising from the control of traffic (or other governmental functions) are subject to immunity. In this connection the maintenance of streets is not to be confused with the policing or use of streets, because to treat policing as maintenance would mean that whatever the city may do on a street is necessarily a proprietary function. In determining the source of a given obstacle we simply look to the purpose which caused its presence.

If, for example, in the instant case, the rope had been for the protection of men repairing the street, there would be a clear connection between the accident and street maintenance, with liability, no doubt, to follow. But, as the case is, the rope had no relation whatever to maintenance of the streets and was exclusively for the purpose of detouring traffic for the protection of child pedestrians—an obviously governmental function. Immunity should therefore exist.

The only Texas *decision* that might be said to support the position of the Court is that of the Court of Civil Appeals in Kling v. City of Austin, supra, to which, as the main opinion states, we have possibly given authority by purporting merely to get authority from it in the Port Arthur case, supra. The Kling case might, perhaps, be distinguished on the ground that the "obstacle" (a fire plug) being of a more or less permanent character, its location in a public way had a closer relationship to maintenance of the streets than the rope in the instant case which was a purely temporary traffic measure. If it cannot thus be distinguished, I think it is wrong and should be overruled.

Opinion delivered April 24, 1957.

Rehearing overruled May 29, 1957.

Justice Norvell not sitting.