Maria Del Refugio GONZALEZ, a feme sole,
Appellant,

v.

The CITY OF EL PASO, Texas, Appellee.

No. 5284.

Court of Civil Appeals of Texas.

El Paso.

May 28, 1958.

Joseph J. Rey, Glen Sutherland, El Paso, for appellant.

Travis White, City Atty., Robert J. Galvan, Asst. City Atty., Bert Williams, Asst. City Atty., El Paso, for appellee.

WILLIAMS, Justice.

This is an appeal from a summary judgment in favor of defendant, City of El Paso, in the 41st District Court of El Paso County. The pleadings and undisputed facts show that Joe Marusich, a city policeman, shot and killed the minor son of the plaintiff while Marusich was on guard duty at the city dump, a place owned and maintained by the City of El Paso for the purpose of disposing of garbage, located near the Rio Grande River, in El Paso. The original petition alleged that Marusich "was acting in the capacity of City policeman and peace officer for the defendant, City of El Paso, and in its employ and pay." The first amended petition, on which the hearing for summary judgment was based, nowhere denies that Marusich was, in fact, a policeman, but says he "was acting under the title of City policeman, with a special assignment as a watchman, or guard * * *." It is nowhere alleged that he was an agent of the city in any other capacity, and it is, therefore, quite clear that if he was an agent of the city, it was in the capacity of policeman. An uncontroverted affidavit filed by the city stated that he was a policeman acting within the scope of his duty, guarding said dump and keeping trespassers away.

Appellant's points of error are stated as follows:

"The Court erred in rendering a Summary Judgment because:

"1. Ultra Vires does not apply.

"2. The facts alleged were not controverted.

"3. Appellant's petition states a cause of action against appellee, City in its Corporate Capacity.

"4. Appellant's petition states a cause of action against Appellee, City in its Governmental Capacity."

Appellee city does not rely on ultra vires doctrine or acts except incidentally and in connection with another point which will be discussed later. We see no merit to appellant's Point One.

For Point Two, appellant asserts that the affidavits filed by the appellee do not controvert his allegation that the city "knowingly permitted its officers and others to use the City dump as a place to discharge firearms, and for a target practice area." The city filed four affidavits: (1) Mr. Muckleroy said he had been Superintendent of the Sanitation Division the entire time that the area was operated as a dump, and stated, among other things:

"I have never given anybody permission to discharge firearms in this area. It has never been designated or authorized for that purpose, or as a target area, by anybody in authority in the City government. I never was informed that people were shooting down there until I heard of statements to that effect after the boy was killed. If I had known that anyone was shooting on the area I would have put a stop to it immediately, because sometimes I have as many as 155 men working in the area."

(2) Mr. Maya, Assistant Superintendent, stated about the same in his affidavit; (3)

Mr. Risinger, Chief of Police, stated that he had never heard of anyone using the dump as a pistol range, and that nobody would have given permission for such action because a city ordinance prohibited it. He then said:

"I am sure nobody in authority in the Police Department, or any other City Department, has ever undertaken to give such permission."

(4) Mr. Herrera, City Clerk, stated, in part:

"The City Council has never designated the Sanitary Fill near Cordova Island as a target range, and has never given permission to anyone to use firearms in that area."

■■ Appellant contends that other people may have given such permission, and these particular affiants would not have known about it; but we see no merit in that contention. The city can act only through its designated officials, and the Clerk categorically stated that the Council had never given any such permission. The other men who were in active charge of the area during its entire existence stated that they never heard of its being so used, and that no one gave such permission to anyone We therefore hold that the affidavits were entirely sufficient to negative the allegation in the petition that the city had "knowingly permitted" etc. Broussard v. Austin Road Co., Tex.Civ.App., Galveston, 1955, 276 S.W.2d 912. Appellant insists that people other than affiants may have known of the situation and, therefore, the affidavits do not negative all possibilities of "knowingly permitting." This is not the test. The city was not required to produce all witnesses who might have information on the subject. Those produced denied the issues, and that cast the burden of going forward with the evidence on the appellant.

■ For his contention under Point Three that the petition stated a cause of action against the city in its corporate capacity, appellant argues that the city used the area as a garbage disposal, which, he admits, was governmental; but he insists that the city also had contracts with certain individuals to pick up salvage from the area, for which they paid the city some compensation. This latter fact is not denied by the city, but it insists that that does not alter the situation and does not render the city liable. We agree with the city's contention, because the authorities are quite uniform in holding that the mere receiving of compensation does not change a governmental function into a proprietary one. In City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872, 878, the Supreme Court held that:

"The character of the city's operation of its hospital is not changed from governmental to proprietary by the mere fact that it makes charges or receives pay. * * * 'If that service be governmental, it does not become private because a charge is made for it.' "

Also: City of Midland v. Hamlin, Tex.Civ. App., El Paso, 239 S.W.2d 159, 25 A.L.R.2d 1048.

■ In his brief, appellant endeavors to separate the two functions of the city, sanitation and the sale of salvage; but this point evidently was not urged before the trial court, because his pleading states that the city owns and operates the dump, and that it has contracts for the sale of salvage and derives an advantage, and, therefore, "the operation of the City dump is not a governmental function, but a proprietary one." Appellant insists that the salvage feature was operated "only for the purpose of making money." We do not think that this contention avails appellant anything, because, as was said in City of Dallas, supra,

"But resolving all doubts in favor of the petition, and giving to its general allegation that the city operated the hospital for profit the construction that the hospital was operated for revenue purposes or for the city's profit in its private or proprietary capacity, we are

confronted with the question of ultra vires.

"* * * The act of the city officials in operating the hospital for such purpose being ultra vires, no liability arises against the city if a tort is committed in connection therewith."

Furthermore, according to the pleading and the undisputed facts, the action of Marusich' causing the boy's death was not the action of any salvage operation. According to the undisputed affidavit, he was a city policeman on duty as such. Therefore, his action, whether it was to keep trespassers off of the dump, or to guard the city's property, was still governmental. Appellant relies on City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935, and Crow v. City of San Antonio, Tex., 301 S.W.2d 628. In the first of these cases the majority of the court held that the city was liable for an accident by the driver of a garbage truck, but it will be noticed that the city was held solely on account of the fact that the jury found that the accident was caused by the negligence of a workman in the city's garage, which repaired the garbage trucks. The majority held that the operation of the garage was a proprietary function, and separate and apart from the operation of the garbage department. We do not have such a situation here, as the selling of the salvage at the garbage dump was certainly incidental to the operation of the garbage department, and was a means of disposing of the garbage; and, as heretofore stated, the mere fact that the city got some money for it did not change its intrinsic nature. Furthermore, as above stated, if the city was in the business of selling salvage for profit, it would be ultra vires, and the city would not be liable. The Crow case is also distinguishable, because there liability was based solely on the fact that the city had obstructed a street, and it is definitely stated in the opinion that to establish liability on this basis there must be a physical obstruction. Signal lights hanging above the street have been held to be a governmental function, because the street is not physically blocked. Parson v. Texas City, Tex.Civ.App., 259 S.W.2d 333 (err. ref.). This distinction is discussed in Justice Garwood's dissenting opinion in the Crow case, supra, beginning 301 S.W.2d on page 631. We do not mean to imply that we are following, or favor, the dissenting opinion, but cite it only because it distinguishes the cases and shows that the majority opinion is not in point in favor of appellant's position herein.

■■ In this connection, appellant urges that the city was knowingly permitting this dump to be used as a firearms target practice range, and, therefore, the city was maintaining a nuisance. As above stated, we think the affidavits of the city categorically deny this allegation, and the appellant did not file any controverting affidavits. It has often been held that a negligence case cannot be converted into a nuisance merely by so pleading. In Walker v. City of Dallas, Tex.Civ.App., 278 S.W.2d 215, 218, this doctrine is well expressed in the following language:

"The principle of nonliability of a city for the negligent acts of its employees while engaged in a governmental function cannot be eliminated by merely pleading that such negligent acts constituted a nuisance. * * * 'We believe that the weight of authority in this state and other jurisdictions is to the effect that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use * * *.' "

See, also, Parson v. Texas City, supra.

■ In the cases above, the Supreme Court refers to the doctrine granting immunity to cities for governmental functions as being a questionable one, and even goes so far as to refer to it as being obnoxious. The Supreme Court definitely says that the trend is away from the immunity doctrine, and goes pretty far in the two opinions, Shilling and Crow, supra, in holding that the city is liable. We do not think, as is above

shown, that either of these cases goes so far as to indicate liability on the part of the city under the instant pleading and affidavits. We do not feel that the Supreme Court has gone so far as to hold the city liable under the instant situation, and, if the doctrine is to be extended to encompass it, the Supreme Court, and not this court, should extend it. We think this is purely and simply an act of a city policeman while on duty doing police work, and that the city is not liable, whether his act be "malicious" or "negligent."

We therefore overrule all of appellant's points of error, and the action of the trial court is affirmed.