Hartford A. LUVAUL, Appellant,

v.

CITY OF EAGLE PASS, Appellee.

No. 235.

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 27, 1966.

Rehearing Denied Nov. 17, 1966.

J. B. Langham and Crawford Reeder, San Antonio, for appellant.

Gerald D. Becker, City Atty., Eagle Pass, Harvey L. Hardy and Ralph Brown, San Antonio, for appellee.

## OPINION

GREEN, Chief Justice.

This appeal is from a summary judgment rendered for defendant-appellee City of Eagle Pass, based on the principle of municipal immunity from tort liability in a case involving the exercise of a governmental function. The parties will sometimes be designated as in the trial court.

The summary judgment evidence consists of the pleadings and a number of depositions. The testimony of the deponents conflicts as to many of the details of the events made the basis of plaintiff's cause, but in accordance with the well established rules in summary judgment cases, we shall give credence to the testimony most favorable to the plaintiff, against whom the judgment was rendered, and all evidence to the contrary where conflicts exist will be disregarded. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Co., Tex.Sup.Ct., 391 S.W.2d 41; Valley Stockyards Company v. Kinsel, Tex. Sup.Ct., 369 S.W:2d 19.

On June 24, 1964, in Eagle Pass, Texas, about 10:00 a. m., plaintiff Hartford A. Luvaul was arrested by one Jose A. Sifuentes, a city policeman acting within the scope of his authority as a member of defendant's police force, and taken to the county jail of Maverick County in said city. While plaintiff was in said jail, under arrest and, according to plaintiff's pleadings and evidence, in the custody and control of defendants Sifuentes and city, a disturbance occurred. We give plaintiff the benefit of the summary judgment rule announced above, and for the purpose of this appeal find that the trouble was not of plaintiff's making. During the disturbance, Sifuentes either negligently or willfully shot plaintiff in the face at close range with a tear gas gun, causing plaintiff to lose the sight of both eyes. After plaintiff was shot, he was placed in a jail cell, and medical aid was not summoned or furnished him for a period of eight hours.

Plaintiff in his First Amended Petition alleged in substance that his injuries resulted from and were proximately caused by acts of negligence or willful wrong committed by the city policeman Sifuentes while within the scope of his employment by defendant city and while plaintiff was under arrest; that his injuries were greatly aggravated by the failure of the city's police officers to summon medical aid; that among the various acts of negligence committed by defendant city was the hiring of an incompetent and violent policeman, knowing him to be such, failure to train him, arming him with a dangerous tear gas gun and in failing to instruct him in the use thereof; in permitting him to unlawfully arrest plaintiff and use undue force on him, and in confining plaintiff in jail knowing him to be seriously injured without immediately summoning necessary medical aid. In a supplemental petition, plaintiff plead that the negligence of city in entrusting the tear gas gun in the hands of Sifuentes, when the city knew or should have known that he was unskilled and untrained in its use constituted a nuisance.

Defendant city's motion for summary judgment which was granted by the court was based "on the undisputed fact that the injuries and damages of which Plaintiff complains were caused, whether rightly or wrongly, and whether proximately or indirectly, by a police officer in the employ

of the City of Eagle Pass, who was on duty and in the discharge of his duties as such police officer at the time of the occurrence giving rise to this suit. That such undisputed fact completely relieves the City from all legal liability to Plaintiff without regard to fault under the doctrine of governmental immunity."

The cause of action alleged against the defendant Sifuentes was severed by order of the trial court from the case against the city, and said individual defendant is not a party to this appeal.

Appellant bases his appeal on three Points of Error, as follows:

### FIRST POINT OF ERROR

The trial court erred in rendering summary judgment for the defendant city on the basis of municipal governmental immunity because such doctrine should no longer be held to obtain in this jurisdiction.

### SECOND POINT OF ERROR

The trial court erred in rendering summary judgment for the defendant city on the basis of municipal governmental immunity under the facts and circumstances of this case because the defendant city's employees, in failing to immediately summon medical aid for the injured plaintiff breached a non-governmental duty to exercise even ordinary care for the plaintiff's safety.

### THIRD POINT OF ERROR

The trial court erred in rendering summary judgment for the defendant city on the basis of municipal governmental immunity because the defendant city created and maintained a nuisance by arming and equipping its employee, Jose A. Sifuentes, with a tear gas gun, a dangerous instrumentality, which nuisance proximately caused the plaintiff's injuries.

Appellee replies with two counter-points, as follows:

### FIRST COUNTERPOINT

The trial court properly rendered summary judgment because appellant's own pleading, and the undisputed facts, show that he has no cause of action under Texas law. (In reply to Appellant's First and Second Points of Error).

### SECOND COUNTERPOINT

Appellant did not, in actual fact, plead nuisance but negligence and, in any event, the "nuisance" of which complaint is made is not a nuisance as such term is known in the law. (In reply to Appellant's Third Point of Error).

We sustain appellee's counter-points and affirm the judgment.

■ Municipal corporations exercise both governmental and proprietary powers; while engaged in the former function, a municipality is not liable for torts committed by its officers or agents, but it is liable for injuries resulting from negligent or wrongful acts committed in the performance of proprietary or corporate functions. City of Dallas v. Smith, Tex.Com.App., 130 Tex. 225, 107 S.W.2d 872; 40 Tex.Jur.2d, Municipal Corporations, § 616, p. 300, and cases cited. The exercise of police power has always been recognized as a governmental function, and our courts have consistently held that a city is not liable in tort for damages caused by the acts of its peace officers while they are exercising the police power of the city. Rusher v. City of Dallas, Tex.Com.App., 1892, 83 Tex. 151, 18 S.W. 333 (plaintiff was illegally arrested by city policeman); Whitfield v. City of Paris, Tex.Com.App., 1892, 84 Tex. 431, 19 S.W. 566, 15 L.R.A. 783, 31 Am. St.Rep. 69 (plaintiff accidentally shot by policeman while negligently shooting at a

dog); Swanson v. City of Nacogdoches, Tex.Civ.App., 161 S.W. 83 (illegal arrest and imprisonment of plaintiff); Tompkins, Auditor v. Williams, Tex.Com.App., 1933, 62 S.W.2d 70 (injured party struck by a motorcycle policeman); Owensby v. Morris, Tex.Civ.App., 79 S.W.2d 934 (unlawful arrest and booking); Archer v. City of Cisco, Tex.Civ.App., 211 S.W.2d 955 (assault on plaintiff by city policeman); Gonzalez v. City of El Paso, Tex.Civ.App., 316 S.W.2d 176, (negligent shooting and killing of plaintiff's son by city policeman); Mayes v. City of Wichita Falls, Tex.Civ.App., 403 S.W.2d 852, (1966) writ ref. n. r. e., (deceased killed thru negligence of police officer in operating city police car.)

Appellant does not contend that the rule of governmental immunity as to municipalities stated above was not the Texas law prior to 1956. Appellant argues, under his first point, that three decisions of the Texas Supreme Court rendered since 1956 have abrogated the doctrine of *municipal* immunity from tort liability in our State. The three "abrogating Texas cases", to quote appellant's brief, are Crow v. City of San Antonio, 1957, 157 Tex. 250, 301 S.W.2d 628; City of Austin v. Daniels, 1960, 160 Tex. 628, 335 S.W.2d 753, 81 A.L.R.2d 1180; and Dancer v. City of Houston, Tex. Sup.Ct.1964, 384 S.W.2d 340.

As we construe the opinions in the above cases, the court found in each that the facts of plaintiff's cause of action involved a combination of the city's governmental functions and proprietary functions, and it was due to the negligence of the city in the performance of its proprietary function that liability was imposed. In Crow, supra, the court reasoned that while the actual roping off of the street was done in the exercise of a governmental function, (traffic regulation) the failure to warn of the rope's presence breached the city's proprietary duty to maintain its streets in a reasonably safe condition for travel. (See discussion of Crow in City of Austin v. Daniels, supra, 335 S.W.2d page 757)

In City of Austin v. Daniels, supra, the city was held liable for injuries sustained when plaintiff slipped and fell on a freshly painted stripe on a city street. The city contended that the stripe was painted to help regulate traffic, a governmental function. Liability was predicated upon the negligent failure to maintain the street in a reasonably safe condition, a function recognized as proprietary as early as 1884 in City of Galveston v. Posnainsky, 62 Tex. 118. It is clear that the court in Daniels did not intend to abolish the doctrine of municipal immunity when it said: "When acting in a governmental capacity, the city is not liable in damages for the torts of its employees". (335 S.W.2d p. 754)

In the third of the so-called "abrogating cases", the City of Houston was held liable for injuries sustained by a city prisoner when he stepped on an exposed axe in a bus transporting prisoners to work in a city park. Dancer v. City of Houston, supra. The Supreme Court stated: "Under the decisions of this state, the establishment and maintenance of a public park is a municipal proprietary function." (384 S.W.2d p. 342) The Court concluded (p. 344):

"In the present case it can be said that the City was exercising both proprietary and governmental functions at the time Dancer was injured. *Undoubtedly a guard in maintaining custody and control over prisoners is exercising a governmental function.* However, one giving direction as to the activities incident to cleaning up the debris in the public park is in essence acting as a supervisor or foreman and in a nongovernmental capacity. There is no intimation here that Dancer was injured as a result of a city police officer's exercise of a power designed to maintain custody or control over his person. The transfer of the prisoners to the park and the presence of the axe in the bus were in furtherance of the design to clear the park of the debris deposited by the hurricane."

Thus it appears that the Supreme Court in the above cited cases, rather than having abrogated the doctrine of municipal immunity, has re-affirmed it as to cases involving the exercise of strictly governmental functions, and has held, as in other cases, that where the breach is of a proprietary, non-governmental function, although the governmental function is also present, the city will be held liable.

As late as October 5, 1966, the Supreme Court refused writs of error, n. r. e. in two Court of Civil Appeals decisions in Bean v. City of Monahans, 403 S.W.2d 155, and Mayes v. City of Wichita Falls, 403 S.W.2d 852. In each of these cases, the defendant city was held not liable as a matter of law for the tortious conduct of its employees while operating in a governmental capacity. As applicable to municipal immunity in tort in the exercise of the police power, we quote from Mayes v. City of Wichita Falls, supra, as follows:

"Assuming that the act of the police officer, agent of the defendant city, was inherently dangerous conduct; and furthermore assuming that the city did fail to properly instruct and supervise him in the performance of his duties as a police officer under the circumstances, yet the established law of this State presently inhibits the imposition of liability upon the city.

"(1, 2) A municipality is not liable for the negligence of its officers in appointing incompetents for the police force or other positions even though known by the appointing officer to be incompetent. McQuillin, Municipal Corporations, 3rd Ed., Ch. 53, 'Municipal Liability for Torts', § 53.78, 'Duty as to employing "competent" servants'; City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872, 879 (1937); 40 Tex.Jur.2d, p. 303, 'Municipal Corporations', § 618, 'Exercise of governmental functions or duties'. It follows that there would be like immunity for negligent retention of known incompetents and even though the incompetence

was the result of the municipality's failure to remedy such by supervision and/or instruction."

■ We do not feel that the Supreme Court of Texas has abolished the rule of municipal immunity for torts of its employees committed while in the exercise of governmental functions, as contended by appellant. Regardless of how we feel as to the merits of the rule, we do not believe that it is the function of an intermediate appellate court to attempt to abrogate such well established doctrine. Appellant's first point is overruled.

■ In connection with appellant's second point, concerning the failure of the city officers to summon medical aid for appellant for a period of several hours after the shooting, we quote from Valdez v. Amaya, Tex.Civ.App., 327 S.W.2d 708, cited with evident approval in the Dancer case, as follows:

"The City's plea in abatement was based upon the contention that Manuel Amaya as City Marshal was exercising police power in making the arrest of Sabas Valdez and, therefore, the City could not be held liable for Amaya's negligence under the doctrine of *respondeat superior,* and further, that if the Marshal was not acting in his official capacity as a police officer, then the City could not be held liable upon any theory, as he had no authority to act for the City in any other capacity.

"The trial court properly sustained the plea in abatement. Whitefield v. City of Paris, 84 Tex. 431, 19 S.W. 566, 15 L.R.A. 783; Archer v. City of Cisco, Tex.Civ.App., 211 S.W.2d 955; Owensby v. Morris, Tex.Civ.App., 79 S.W.2d 934; 30-B Tex.Jur., Municipal Corporations, § 648.

"Appellants contend that the City is liable for the negligence of the Marshal in failing to furnish Sabas Valdez immediate emergency medical treatment at

the time he was placed in the City jail, when it was obvious that he needed such treatment. We cannot agree. The Marshal, in arresting Sabas Valdez and placing him in jail, was exercising police power and, regardless of what his negligence was in this connection, the City is not liable for the damages caused by such negligence, under the doctrine of *respondeat superior.* The authorities cited above clearly support this rule."

The second point of error is overruled.

Appellant's third point concerns his allegations in his pleadings that a nuisance was created when the city negligently entrusted a dangerous instrumentality, towit a tear gas gun, into the hands of Sifuentes when it knew, or could and should have known, that he was unskilled and untrained in its use.

It is well settled law in our State that a municipality may be held liable for damages caused by the creation and maintenance of a nuisance, regardless of whether the city is performing a governmental or non-governmental function. City of Fort Worth v. Crawford, Tex.Com.App., 74 Tex. 404, 12 S.W. 52; City of Fort Worth v. Wiggins, Tex.Com.App., 5 S.W.2d 761; Parson v. Texas City, Tex.Civ.App., 259 S.W.2d 333, writ ref. However, as stated in Gonzalez v. City of El Paso, Tex.Civ. App., 316 S.W.2d 176:

"It has often been held that a negligence case cannot be converted into a nuisance merely by so pleading. In Walker v. City of Dallas, Tex.Civ.App., 278 S.W.2d 215, 218, this doctrine is well expressed in the following language: 'The principle of nonliability of a city for the negligent acts of its employees while engaged in a governmental function cannot be eliminated by merely pleading that such negligent acts constituted a nuisance.' "

In Parson v. Texas City, supra, collision of two cars at a street intersection was caused by the fact that a traffic signal light was out of order, showing green go-ahead signals simultaneously to traffic approaching from all four directions. The point before the appellate court, on an appeal from a summary judgment for the city, was whether the continued maintenance of the defective traffic light for several days created a nuisance. The Court of Civil Appeals, in an opinion discussing Texas and out of state authorities, held that it did not, and affirmed the trial court's judgment. The Supreme Court unqualifiedly refused a writ of error. We quote briefly from the opinion as follows: (259 S.W.2d p. 336)

"We believe that the weight of authority in this state and other jurisdictions is to the effect that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use, and are constrained to hold that the maintenance of the signal light in the condition described in appellants' pleadings did not constitute a nuisance making the City liable, and that the court did not err in sustaining appellee's motion for summary judgment."

In the present case, there was no pleading or showing of proof by affidavit or otherwise that the tear gas gun or the shell used therein was in any way defective or inherently dangerous when properly used. It is manifest from the record that it was the way in which the gun was used, and not danger inherent in the gun, that is complained of as resulting in plaintiff's injuries. Actually, plaintiff's pleading in this instance is one of negligent entrustment, and not of nuisance.

Appellant's third point is overruled.

Judgment affirmed.