Raymond **PONTARELLI TRUST** by **Lois Pontarelli, Trustee, Appellant,**

v.

**CITY OF McALLEN, Texas, Appellee.**

No. 587.

Court of Civil Appeals of Texas, Corpus Christi.

March 18, 1971.

Rehearing Denied April 8, 1971.

**806**

Henrichson, Bates & Hendrix, Edinburg, Arthur L. Gallucci, McAllen, for appellant.

Rankin, Kern & Martinez, H. H. Rankin, Jr., H. Hollis Rankin III, McAllen, for appellee.

## OPINION

BISSETT, Justice.

This is a suit brought by the Raymond Pontarelli Trust and its Trustee, Lois Pontarelli, plaintiff below and appellant herein, against the City of McAllen, Texas, defendant below and appellee herein, to recover damages to land alleged to have been sustained because of the negligent operation of sewer facilities by the appellee. The parties will be referred to here as they were in the trial court.

The trial court sustained defendant's Special Exceptions I and II to plaintiff's original petition. The plaintiff in open court refused to amend its petition to meet the special exceptions so sustained; whereupon, the trial court dismissed the case. Plaintiff has duly and timely perfected an appeal to this Court. We affirm.

In view of the manner of disposition made by the trial court, it is necessary for us to summarize in some detail the allegations contained in plaintiff's original petition.

Plaintiff's petition discloses, so far as is necessary to dispose of this appeal, that defendant is a duly incorporated city; that plaintiff's land claimed to have been damaged is situated outside of the city limits of the City of McAllen; that on or about September 19, 1967, "a natural disaster occurred, to-wit: a mighty hurricane, popularly called 'BEULAH'" struck the area of Hidalgo County, which included the City of McAllen and plaintiff's land; that immediately thereafter torrential rains fell for several days, flooding the entire County of Hidalgo; that near plaintiff's land is an open ditch "which is used for drainage purposes by the Hidalgo County Drainage District Number One, a legally organized political entity created for the purpose of draining surface and underground waste waters from a large portion of Hidalgo County, Texas, including the City of McAllen"; that the open ditch runs "through the City of McAllen, providing an unbroken open ditch from Defendant's property to Plaintiff's property"; that on September 26, 1967, defendant, "by its agents and employees", placed a pump on the bank of the drainage ditch at a point within its corporate limits, putting the suction end of the pump in a sanitary sewer line operated by defendant, and the discharge end of the pump in the drainage ditch; that the pump operated for more than 48 hours, during which time it discharged from the sanitary sewer line into the open drainage ditch large quantities of a mixture composed of "detergents, toilet waters, urine, human excretion, dirt, oils, greases and other materials foreign to ordinary good health and welfare of others"; that as a direct result of defendant's pumping operations, large quantities of the above-mentioned mixture were caused by the ordinary overflow of waters from the drainage ditch to be deposited in plaintiff's private lake and on its land, to plaintiff's damage.

After pleading its facts and setting out its allegations, plaintiff particularly alleged that defendant was negligent in the following particulars: (1) "In not determining the condition of the entire area served by such ditch, so that it would have known that the said ditch was full in some low areas served by it and, particularly, the land owned by Plaintiff, and that additional waters added therein would cause flooding upon Plaintiff's property"; and, (2) "In pumping into such open ditch matters containing de-

tergents, oils, dirt, greases, urine, human excretion and other foreign materials well known to Defendant to be in said sewer". In other paragraphs of the petition, plaintiff used the phrases "that because of the aforesaid negligent acts of Defendant, Plaintiff's property was damaged", etc., "after the acts of negligence complained of above", etc., and "their said acts of negligence", etc.

Plaintiff also alleged that defendant, by pumping the contents from its sanitary sewer line into the open drainage ditch, violated Article 1356, Vernon's Ann.P.C. and Article 7621d–1, Vernon's Ann.Civ.St. However, no point of error involving such alleged violations is brought forward. In such case, we express no opinion as to whether any such alleged violation could form the basis for a cause of action in favor of plaintiff.

Defendant, in its Special Exception I, excepts to plaintiff's original petition in its entirety and alleges that the petition does not state a cause of action because it seeks to hold defendant liable for the negligent operation of its sanitary sewer system, the operation of which is a governmental function. We do not enumerate the specific grounds set out in defendant's Special Exception II, because of the view that we take of this appeal.

We believe that the issue of whether or not defendant is responsible for the acts of its agents and employees at the time of the occurrence in question is determinative of this case. The controlling question, therefore, for our determination is whether the allegations of plaintiff's petition show that at the time of the alleged injury to its premises defendant was engaged in the performance of a proprietary function, rather than a governmental function.

To a very large extent the question of whether a city is acting in a purely governmental capacity or a purely proprietary capacity can only be settled by the facts of each particular case. For a distinction between the two general classes of duty and

the resulting dual functions that rest upon a city, see City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010 (1951); City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259 (1944); City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516 (1942); 40 Tex.Jur.2d, Municipal Corporations, § 619, pp. 304–306.

The governmental functions of a city are those enjoined upon it by law and are given it by the state as a part of the state's sovereignty, to be exercised by the city in the interest of the general public, living both within and without its corporate limits. When performing a governmental function the city, except as may otherwise be provided by Article 6252–19, V.A.C.S., effective January 1, 1970, commonly called the Tort Claims Act, is not responsible for the negligent acts of its agents and employees in the performance of those duties. City of Austin v. Daniels, 160 Tex. 628, 335 S.W.2d 753 (1960); Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035, 114 S.W.2d 853 (1938); City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872 (1937); Gartman v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879 (1937); City of Fort Worth v. Wiggins, 5 S.W.2d 761 (Tex. Com.App.1928); City of Fort Worth v. George, 108 S.W.2d 929 (Tex.Civ.App., Fort Worth 1937, wr. ref.); Voight v. City of Corpus Christi, 419 S.W.2d 445 (Tex.Civ. App., Corpus Christi 1967, wr. ref. n. r. e.); City of Waco v. Thompson, 127 S.W.2d 223 (Tex.Civ.App., Waco 1939, wr. dism. judg. corr.).

Proprietary functions of a city are those which are intended primarily for the private advantage and benefit of persons within the corporate limits of the municipality as distinguished from that of the general public. These are functions which the city, in its discretion, may perform when considered to be for the best interests of the inhabitants of the municipality. In the performance of proprietary functions, the city is liable for the torts of its agents and employees in the same man-

ner and to the same extent as are individuals or private corporations. Crow v. City of San Antonio, 157 Tex. 250, 301 S.W.2d 628 (1957); City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326 (1955); City of Waco v. Branch, 117 Tex. 394, 5 S.W. 2d 498 (1928); City of Galveston v. Posnainsky, 62 Tex. 118 (1884); City of Wichita Falls v. Phillips, 87 S.W.2d 544 (Tex. Civ.App., Fort Worth 1935, wr. dism.); City of Dallas v. Early, 281 S.W. 883 (Tex. Civ.App., Dallas 1926, wr. dism.).

◼ It is made the duty of a city by Article 4477–1, V.A.C.S., to dispose of sewage in a sanitary manner. It is well settled by the decisions of our Supreme Court that sanitation for the public health of a city is a governmental function, and a city, when exercising such power, except in the situations affected by Article 6252–19, V.A. C.S., is not liable for injuries caused by the torts of its agents, employees and officers. City of Wichita Falls v. Robison, ·121 Tex. 133, 46 S.W.2d 965 (1932); Ballard v. City of Fort Worth, 62 S.W.2d 594 (Tex.Civ. App., Fort Worth 1933, wr. ref.); Steele v. City of El Paso, 417 S.W.2d 923 (Tex.Civ. App., El Paso 1967, wr. ref. n. r. e.). Specifically, it has been held that the maintenance and operation of a sanitary sewer system by a city is a governmental function. Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941); Bowie v. City of Houston, 259 S.W.2d 765 (Tex.Civ. App., Galveston 1953, wr. ref. n. r. e., 152 Tex. 533, 261 S.W.2d 450).

◼ On the other hand there are many decisions by the courts of this State that hold that the construction and operation of a storm sewer for the purpose of draining surface waters from the corporate limits of a city is a proprietary function. Cities are responsible for damages inflicted by tortious conduct of its agents, employees and officers in the construction and maintenance of such facilities. Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992 (1949); City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (1931); Jones v. City of

Texarkana, 100 S.W.2d 198 (Tex.Civ.App., Texarkana 1936, wr. dism.). However, there is a clear distinction between the work of constructing or maintaining a storm sewer to drain surface waters from the area within the city limits for which there may be liability imposed on the city, and work of sanitation for the preservation of the health of the public in general for which there is no liability on the part of the city.

◼ There have been a number of cases where a governmental function of a city has been combined with a proprietary function. This situation was discussed by this Court in Luvaul v. City of Eagle Pass, 408 S.W.2d 149 (Tex.Civ.App., Corpus Christi 1966, wr. ref. n. r. e.), where the Court said:

"As we construe the opinions in the above cases, the court found in each that the facts of plaintiff's cause of action involved a combination of the city's governmental functions and proprietary functions, and it was due to the negligence of the city in the performance of its proprietary function that liability was imposed. * * *"

In situations where governmental functions and proprietary functions are merged to the extent that the function may properly be said to have taken on a dual nature, governmental and proprietary, a city may be rendered liable for the torts of its agents, employees and officers. City of Port Arthur v. Wallace, 141 Tex. 201, 171 S.W.2d 480 (1943); City of Houston v. Wolverton, 270 S.W.2d 705 (Tex.Civ.App., Waco 1954), affirmed 154 Tex. 325, 277 S.W.2d ·101 (1955).

In the present case plaintiff admits that the City of McAllen, before, during and after the floods triggered by the hurricane, in the operation of its sanitary sewer system, was engaged in the performance and furtherance of a governmental function. However, in its brief plaintiff insists that its pleadings are broad enough to allege a merger of the city's governmental func-

tion with its proprietary function. We do not agree.

A careful reading of plaintiff's petition reveals that there are two separate and distinct facilities involved in this case. One is the sanitary sewer alleged to have been operated and maintained by the City of McAllen. The other is a surface drainage storm sewer, referred to in plaintiff's petition as an "open drain ditch", and alleged to have been operated and maintained "for drainage purposes by the Hidalgo County Drainage District Number One, a legally organized political entity created for the purpose of draining surface and underground waste waters from a large portion of Hidalgo County, Texas, including the City of McAllen, Texas, Defendant herein". Plaintiff does not use the term "storm sewer" in its petition, but in its brief and oral argument contends that this "open drain ditch" constituted a "storm sewer". There is no allegation as to whether this ditch was operated by the drainage district in either its governmental or proprietary capacity. The aforesaid drainage district is not shown by the petition to have any connection or association with either plaintiff or defendant. It is not a party to this suit. The petition is emphatic in stating that this ditch serves the interest of a large segment of Hidalgo County and does not primarily serve the interest of just the inhabitants of the City of McAllen. There is no allegation in the petition that the City of McAllen was at any time engaged in the draining of surface waters from its corporate limits. Plaintiff does not allege that the defendant was engaged in the construction or maintenance of a storm sewer as distinguished from a sanitary sewer. There is no pleading that defendant was ever operating the ditch as a surface water drainage facility. On the other hand, plaintiff alleges that the drainage ditch was being operated and maintained by the drainage district. There is nothing in the petition that even intimates that the defendant had ever put into effect any general plan of drainage for its citizens.

There is no indication in the pleadings of whether the defendant operated and maintained any other storm sewer. The allegation that the city pumped sewage into the drainage ditch is not sufficient to allege that it was operating the ditch as a proprietary function. The function of the operation of the ditch, be it proprietary or governmental, according to the petition, was that of Hidalgo County Drainage District Number One, and none else.

The other sewer facility is, admittedly, a sanitary sewer system of defendant, located within its corporate limits, and operated by defendant "for the purpose of removing to a filtration plant, and other sanitary disposal facilities, the common and ordinary waste discharges of the persons and properties of the residents of Defendant. * * * " The ordinary meaning of the word "sanitary" is that which pertains to public health with particular reference to cleanliness and facilities designed to secure and preserve health. The purpose of maintaining a sanitary sewer system by a city is not just for the protection of the inhabitants within its corporate limits, but to protect the health of the public in general. Therefore, the City of McAllen, under the circumstances and conditions of the then existing emergency as alleged in plaintiff's petition, in the performance of its duty in its governmental capacity in the operation of its sanitary sewer system, was authorized to do and perform such acts as were then reasonably necessary or appropriate. This function the city had to perform. It had no option or discretion. The pleadings of plaintiff do not allege or intimate that defendant was ever engaged in the performance of any proprietary function whatever. Had the pleadings alleged that the ditch was being maintained by the City of McAllen, rather than by the drainage district, then an entirely different question would have been presented; and, in such case, it may well have been that the acts of defendant in pumping sewage into its own drainage ditch might have, in effect, combined a governmental function with a

proprietary function so that liability could have been imposed on defendant. But, those allegations are not before us in this appeal.

■ We believe that this case is controlled by the general rule that the exemption of a governmental agency from tort liability pertains only to its acts or functions, which are performed as the agent of the state in furtherance of the general law, for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of the municipality. The acts by the employees of the City of McAllen come within this rule. It was required that the city comply with the provisions of Article 4471–1, V.A. C.S., and such compliance, of itself, is the exercise of a governmental function. Moreover, the acts alleged, of which complaint is made, were performed in the furtherance of a strictly governmental function solely for the benefit of the general public, and were not performed primarily for the benefit of that portion of the public within the corporate limits of the City of McAllen.

■ It has long been established that an exception to the immunity extended to a city in the exercise of a governmental function exists when a city creates or maintains a nuisance in connection with a governmental function. City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52 (1889); Parson v. Texas City, 259 S.W.2d 333 (Tex.Civ.App., Fort Worth 1953, wr. ref.). But, plaintiff did not charge defendant with creating or maintaining a nuisance and that it was a proximate cause of the damages sought to be recovered; nor are there allegations in the petition reasonably susceptible to any interpretation that plaintiff sought to predicate liability of the City of McAllen upon any nuisance created or maintained by it. Therefore, plaintiff's petition does not state a cause of action on the nuisance theory.

Plaintiff, in its brief, says that "the private rights of a citizen of this state are still protected by our State Constitution and Federal Constitution. When the State or any of its agents attempts to take property away, or damage same, without due process of law or without just compensation, one of the fundamental rights of the individual has been violated". We are wholeheartedly in agreement with such an eminently correct statement of the protection afforded the citizens of this State. However, in the case at bar, plaintiff, in its pleading, does not allege that its property has been taken, damaged or destroyed for, or applied to public use without its consent and without compensation. It does not, by its petition, invoke the protection of the provisions of Article 1, Section 17, Constitution of Texas, Vernon's Ann.St. There is a great distinction between a cause of action based on that section of the constitution and a cause of action based on a tort. Justice Sharp, in State v. Hale, 136 Tex. 29, 146 S.W.2d 731 (1941), reviews the wealth of authorities on this distinction, and says:

"The liability of the State under Section 17 of Article 1, supra, for taking, damaging, or destroying private property for public use, where the authority is properly exercised, should not be confused with the claim for damages caused by the negligent acts or wrongs committed by its agents or officers. * * *"

For further discussion on a constitutional damaging or taking, see City of Abilene v. Downs, 367 S.W.2d 153 (Tex.Sup.1963); Texas Highway Department v. Weber, 147 Tex. 628, 219 S.W.2d 70 (1949); State v. Sparks, 296 S.W.2d 609 (Tex.Civ.App., Eastland 1956, n. w. h.).

To hold, under the petition before us, that plaintiff has stated a cause of action would, in effect, establish a principle of law that a city is responsible for damages for torts committed by its employees in the performance of their duties incidental to a governmental function. It may be true, and unfortunately so, that plaintiff may have suffered damage to its property. The normal reaction is that it should be com-

pensated therefor. On the other hand, the doctrine of non-liability of the city in the performance of governmental functions is grounded on sound public policy. If the city were liable for every tortious act of its employees committed in the performance of their official duties incidental to mandatory, governmental functions, public service and the necessary administrative functions would be hopelessly impaired.

The purpose of a pleading is to inform the court and the adverse party of what the pleader's contentions will be on the trial of a case, and the office of special exceptions is to furnish the adverse party a medium by which to force clarification of and specifications in pleadings when not clear or sufficiently specific. Rules 45 and 91, T.R.C.P.; Texas Lime Company v. Hindman, 300 S.W.2d 112 (Tex.Civ.App., Waco 1957), aff'd 157 Tex. 592, 305 S.W.2d 947 (1957); Cruz v. Ansul Chemical Company, 399 S.W.2d 944 (Tex.Civ.App., Corpus Christi 1966, wr. ref. n. r. e.).

The trial court did not abuse his discretion when he sustained the exceptions heretofore mentioned. Such exceptions were sufficient to point out the defects in plaintiff's petition. Rule 91, T.R.C.P. Plaintiff was not harmed by the action of the trial court in sustaining the special exceptions; ample opportunity was given plaintiff to amend its petition; the injury to plaintiff, if any, was caused by its refusal to amend its petition so as to allege acts constituting either the commission of a nuisance, or the combination of a governmental function with a proprietary function, or a constitutional taking or damaging of its property without its consent and without compensation. Plaintiff elected not to do so, and stood on its petition as originally filed. Therefore, plaintiff is bound by its decision.

Plaintiff did not have a cause of action against defendant until there was a legal injury for which defendant was liable. No such legal injury is alleged in the pleadings of plaintiff. We hold that the petition

in this case clearly alleges that the City of McAllen was in the discharge solely of a governmental function at the time the alleged negligent acts of its employees were committed and that the pleadings denominate the cause of action asserted therein simply one sounding in tort, and no more. The trial court properly sustained defendant's Special Exception I to plaintiff's petition, and when plaintiff declined to amend, correctly dismissed the suit. Plaintiff's First Point of Error is overruled.

In view of our ruling, it is not necessary to discuss plaintiff's second point.

The judgment of the trial court is affirmed.