Angel DE LA GARZA and Alma De La Garza, Appellants,

v.

CITY OF McALLEN, Appellee.

No. 13–92–481–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 25, 1994.

Servando H. Gonzales, Jr., Ricardo A. "Ric" Ramos, McAllen, for appellants.

Robert L. Galligan, Michael H. Hearn, Jones, Galligan & Key, Weslaco, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellants sued the City of McAllen and Hidalgo County for wrongful death. The City filed a motion for summary judgment and a motion for partial summary judgment. The trial court granted both motions and appellants appeal. By two points of error, appellants contend that the trial court erred by granting the motion for summary judgment and motion for partial summary judgment. We affirm the partial summary judgment, reverse the summary judgment, and remand the case to the trial court for further proceedings.

On the evening of May 28, 1989, appellants' 16 year old son, Aaron De La Garza, was a passenger in a vehicle driven by Robert Garza. Garza, while under the influence of alcohol, fell asleep at the wheel and veered off the road into a 30–foot deep City-owned caliche pit. Aaron died as a result of the accident.

The caliche pit is located at the northeast corner of the intersection of North Bryan Road and Three Mile Line Road (FM 1924). Bryan Road is a straight, two-lane, paved road, 22 feet wide, with unimproved shoulders and no center stripe. The pit is approximately 30 feet deep, straight down, without any sloping, and in some places cuts into Bryan Road's right-of-way by 3 or 4 feet. The pit is a cavern of not less than 250 square feet. The original owner of the pit protected those traveling along the roadway by building mounds of dirt six to eight feet high next to the roadway. The City purchased the pit in 1977 for use as a landfill. The City subsequently erected a wire mesh fence along the road right-of-way. After the accident, a guardrail replaced the wire fence.

On May 8, 1991, appellants brought a wrongful death action against the City of McAllen and Hidalgo County under Tex.Civ. Prac. & Rem.Code §§ 71.004 and 71.021 and the Texas Tort Claims Act.[1] Appellants alleged in their original petition that the pit was a special defect and that both the City and the County knew or should have known of the dangerous condition and should have made the condition reasonably safe. Specifically, appellants alleged 1) that the County had a duty to inspect, maintain, improve, work and repair its public roads, 2) that the County had removed the dirt mounds which the original owner had placed along the roadway to prevent vehicles from plunging into the pit, 3) that the County had erected no warnings signs, and 4) that the County knew that the pit, without artificial barriers, would pose an unreasonable risk of harm to users of the roadway. Appellants also alleged that the City owned the pit and knew of the unreasonable risk of harm and failed to warn of the dangerous condition or to make the condition reasonably safe. Appellants did not allege that the City had created the danger or owed a duty to the decedent. The City entered a general denial and asserted common law and statutory immunity against suit.

On May 14, 1992, the City filed a second amended answer, a motion for summary judgment and a motion for partial summary judgment. The City moved for summary judgment on the grounds that it had no duty to foresee the negligent conduct of Robert Garza, the intoxicated driver of the vehicle. The City offered excerpts from the depositions of Robert Garza and Department of Public Safety (DPS) Trooper Francisco Elizondo and the autopsy report from pathologist Dr. Ruben Santos as summary judgment evidence.

1. Tex.Civ.Prac. & Rem.Code § 101.101–§ 101.109 (Vernon 1986).

On June 3, 1992, appellants filed their response to the City's motion for summary judgment and motion for partial summary judgment. Appellants argue that the City, in the exercise of ordinary and prudent care, could reasonably have foreseen that a user of the road might accidently deviate from the ordinary course of travel and be seriously injured if a proper barrier was not placed between the pit and the paved street. Appellants contend that the magnitude of guarding against the injury and the burden of requiring the City to place a barrier around the pit is slight, and that but for the absence of a proper barrier the decedent would not have perished at the bottom of the pit. Appellants contend that there remains a material fact issue regarding the foreseeability element of proximate cause and, effectively, the foreseeability element of duty which preclude the granting of summary judgment.

Appellants offered the affidavit of Charles Ruble, an accident analyst, and excerpts from the depositions of Joseph Chappell and Calvin Gibson as controverting summary judgment evidence. Ruble's affidavit states that the pit created an unreasonable risk of harm and that the accident was a proximate and foreseeable result of the City's failure to erect a proper barrier between the pit and the asphalted pavement. Joseph Chappell, foreman of the company directed to dig the pit, testified that the original dirt barrier was placed alongside the roadway "for safety, to keep someone from running off the road, running off the road into the pit." Appellants also offered excerpts from the deposition of Calvin Gibson, the City Manager at the time the pit was purchased. Gibson remembered inspecting the property before it was purchased by the City. According to Gibson, "there was a border up there; and there was a fence and numerous signs up there, no dumping, because people would back their pickup trucks and throw stuff over the fence." Appellants argue that this evidence shows that it was reasonably foreseeable that, if the owner of the pit did not place a proper barrier between the pit and the paved street, a traveler along the roadway could accidently deviate from the ordinary course of travel and be seriously injured.

On June 8, 1992, appellants filed their second amended petition and abandoned all claims against Hidalgo County. On June 25, 1992, appellants filed a nonsuit as to Hidalgo County. Appellants alleged in their second amended petition that the City was negligent and grossly negligent. They alleged that the City knew that the pit, without artificial barriers or warning signs or lights, posed an unreasonable risk of harm to users of the roadway and failed to warn users of the road, specifically De La Garza, of the dangerous condition or to make the condition reasonably safe. In addition, appellants alleged that the caliche pit is a hidden special defect and a dangerous condition of such magnitude as to place a high duty of care on the City to protect the users of the road from it.

The City did not amend its motion for summary judgment or supplement its proof before the summary judgment hearing.

By their first point of error, appellants contend that the trial court erred by granting the City's motion for summary judgment because a material issue of fact exists as to whether the lack of a proper barrier was a proximate cause of Aaron De La Garza's death and, effectively, whether the City of McAllen had a duty to place a barrier between the pit and the roadway and to warn roadway users of the dangerous condition.

■ The order granting summary judgment does not specify the grounds upon which the trial court relied. Therefore, the judgment will be affirmed if any theory advanced by the City is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

■ Actionable negligence consists of three elements: 1) a legal duty, 2) breach of that duty, and 3) injury proximately caused by the breach of duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). In order to establish liability in a negligence case, a plaintiff must prove the existence of a duty and a violation of such duty. *Graff v. Beard*, 858 S.W.2d 918, 919–20 (Tex.1993); *Phillips*, 801 S.W.2d at 525; *El Chico*, 732 S.W.2d at 311; *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665, 667 (Tex.App.—Corpus Christi

1990, no writ); *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845 (Tex.App.—San Antonio 1989, writ denied). The existence of a legal duty is usually a question of law for the court to decide from facts surrounding the occurrence in question. *Mitchell v. Missouri–Kansas–Texas R.R.*, 786 S.W.2d 659, 662 (Tex.), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990); *Phillips*, 801 S.W.2d at 525; *Otis Eng'n Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983); *Wofford v. Blomquist*, 865 S.W.2d 612, 614 (Tex.App.—Corpus Christi 1993, writ denied); *Hanselka*, 800 S.W.2d at 667–668. A trial court can properly dispose of a negligence case by summary judgment if it finds no duty in the actor, even if all of the facts alleged by the plaintiff are true. *Wofford*, 865 S.W.2d at 614.

The City moved for summary judgment on the sole ground that it owed no duty to foresee the negligent conduct of Robert Garza. The City alleged that no act or omission by the City caused the accident resulting in De La Garza's death and that the City, as a landowner, owes no duty to anticipate the negligent acts of travelers on adjacent roadways. The issue is whether the summary judgment evidence establishes as a matter of law that the City owed no duty to Aaron De La Garza.

The City relies primarily on the deposition testimony of Robert Garza to show that his driving while intoxicated and failure to stay on the right side of the roadway caused the accident. Garza testified that he had a history of alcohol use and driving while under the influence of alcohol. Garza also testified that he and the decedent had been drinking beer on the day of the accident. When asked if he remembered how the accident happened, Garza testified as follows:

A  I just remember blacking out.

Q  When did you black out? Was it near the accident or a ways back?

A  I remember driving, you know, I could see the stop sign, I was getting a pretty distance from the stop sign, and I just blacked out and flew off the cliff.

Q  Do you remember hitting the fence posts on the way?

A  I remember something breaking the windshield, one of the poles, that's about it. By the time I knew it, I was upside down.

Q  Did you fall asleep?

A  I could have. Just blacked out and probably did fall asleep.

When asked whether he would agree that the failure to stay on the right side of the road was the cause of the accident, Garza replied, "I would say so, yes."

According to Trooper Elizondo's investigation, Garza's vehicle veered off to the left, left the roadway, and travelled forty feet before the driver applied the brakes. The vehicle then travelled an additional 100 feet before hitting the wire fence. It then went over the crest or highest part of the small dirt embankment, the left tires leaving the ground and the right tires and bottom frame holding the vehicle to the ground on the side of the dirt mound. The vehicle travelled another 110 feet, leaving skid marks, before becoming airborne and colliding with a small tree. It landed upside down at the bottom of the 29–foot deep caliche pit. The vehicle plunged into the caliche pit at approximately one-fourth of a mile north of Three Mile Line Road. The decedent was not wearing his seat belt and was ejected from the vehicle. Trooper Elizondo opined that the intoxication of the driver and his lack of sleep were the cause of the accident. Garza had a blood alcohol content of 0.11 seven hours after the accident. The autopsy report reflects that the decedent had a blood alcohol content of 0.10 and died of multiple injuries.

The City contends that the summary judgment evidence conclusively establishes that it owed no duty to warn the decedent or to construct additional barriers because the City could not reasonably foresee the negligent actions of Robert Garza, *i.e.*, driving while intoxicated, falling asleep, deviating from the proper side of the roadway, and driving off the roadway into the pit. The City attempts to disprove the existence of an alleged duty of care by showing that Garza's negligence, and not any act or omission by the City, was the sole and unforeseeable cause of the accident.

The City cites *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191–92 (Tex. App.—San Antonio 1988, writ denied) in support of its contention that the City, as an adjacent landowner, is not bound to anticipate the negligent conduct of an intoxicated driver on the roadway. In *Naumann*, the plaintiff alleged that Windsor Gypsum had negligently designed its plant in a manner that forced eighteen-wheel tractor-trailer rigs exiting its property to block both lanes of an adjacent roadway, thereby creating a hazard to motorists like the plaintiff, who accidently struck a tractor-trailer rig[2] as it was making its turn. The San Antonio Court of Appeals upheld the trial court's summary judgment and found that Windsor Gypsum owed no duty to the plaintiffs.

The *Naumann* court acknowledged the prevailing rule that an owner or occupier of premises abutting a highway 1) has a duty to exercise reasonable care to avoid endangering the safety of persons using the highway as a means of travel and 2) is liable for any injury that proximately results from his negligence. However, the court held that such a duty does not create an obligation to guard passing motorists against the possible negligence of third persons over whom the landowner exercises no control. The court also distinguished the case from other cases involving the negligent release of an agency that becomes dangerous by its very nature upon the highway. *Naumann* 749 S.W.2d at 191–92.

*Naumann* is distinguishable from the instant case. The issue in the instant case is whether the risk of injury was foreseeable to impose a duty on the City. That issue was not the dispositive issue in *Naumann*. Windsor Gypsum's knowledge that trucks often blocked the adjacent roadway did not automatically impose a duty on Windsor Gypsum to insure the safety of travelers on the roadway.

A possessor of land who maintains an excavation so near an existing highway that he should realize that it involves an unreasonable risk of harm is liable, and where the highway is established near an existing excavation or other dangerous condition, a duty to guard it is on those charged with maintaining the highway in a safe condition. *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954, 957 (1945). An owner or occupier of property abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of travelers. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *Atchison v. Texas & P. Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228 (1945). *See* W. PROSSER, LAW OF TORTS §§ 368, 414A (1965).

The duty owed to a trespasser is "not to injure him willfully, wantonly or through gross negligence." *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The distinction between the duties owed to a licensee and to a trespasser is that while one always has a duty to warn the former of a known hazard, one must warn the latter only if failure to do so would be grossly negligent. *Denham v. United States*, 834 F.2d 518 (5th Cir.1987); *Smither v. Texas Util. Elec. Co.*, 824 S.W.2d 693, 695–696 (Tex.App.—El Paso 1992, writ dism'd by agreement) (where trespassing fisherman drowned, no duty owed to warn of dangerous condition or to make premises safe).

While the City is under no duty to control the acts of third persons, it must exercise reasonable care to avoid endangering the safety of persons using the abutting roadway. Therefore, we will determine whether the summary judgment evidence establishes that the City exercised reasonable care not to endanger the safety of persons on the abutting roadway. Because the evidence indicates that Aaron De La Garza was a mere trespasser on the premises, we will also determine whether the summary judgment evidence establishes that the City's conduct did not constitute gross negligence.

A defendant moving for summary judgment must establish, as a matter of law, that no material issue of fact exists as to one or more of the essential elements of the

---

**2.** The tractor-trailer rig was owned and operated by an independent contractor over which Windsor Gypsum had no control at the time of the accident.

plaintiff's cause of action and that it is entitled to judgment as a matter of law. *Griffin v. Rowden,* 654 S.W.2d 435, 435–436 (Tex. 1983); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Hanselka v. Lummus Crest, Inc.,* 800 S.W.2d 665, 666–667 (Tex.App.—Corpus Christi 1990, no writ); *Arredondo v. Lindley Int'l Trucks, Inc.,* 758 S.W.2d 846, 848 (Tex.App.—Corpus Christi 1988, writ denied). The plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex.1972). In deciding whether a disputed material fact issue exists, evidence favorable to the non-movant will be taken as true and every reasonable inference must be indulged in favor of the non-movant, with any doubts resolved in their favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Summary judgment may not be affirmed or reversed on grounds not expressly set forth in the motion before the trial court. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979); *Wofford,* 865 S.W.2d at 614.

■ We find no evidence in the record from which the trial court could conclude 1) that the City exercised reasonable care not to endanger the safety of persons on the abutting roadway and 2) that the City's conduct did not constitute gross negligence. Instead, the City attempts to show that De La Garza's death was not *caused* by an act of the City or by any continuing hazard arising from the caliche pit but rather by the criminally reckless act of an intoxicated driver. While this evidence may prove dispositive at trial, it fails to prove, as a matter of law, that the City owed no duty to De La Garza as a traveler on the abutting roadway.

After reviewing the evidence in the record, applying the proper standard of review, and indulging all reasonable inferences in favor of the nonmovant, we hold that there are genuine issues of material fact to be resolved in this case. These issues include whether the City exercised reasonable care not to endanger the safety of travelers on the roadway and whether the City's acts constituted gross negligence.

By our ruling today, we do not impose a duty upon owners of property adjoining roadways to erect barriers to protect intoxicated drivers from injuring themselves or others. We simply adhere to the standard applied in summary judgment practice requiring the movant to prove by sufficient evidence its entitlement to judgment as a matter of law. Appellants' first point of error is sustained.

By their second point of error, appellants contend that the trial court erred by granting the City's motion for partial summary judgment. The City's motion for partial summary judgment sought to limit appellants' cause of action to a maximum recovery of $250,000 under the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE § 101.0215 (Vernon Supp.1994).

The City's summary judgment evidence included excerpts from the depositions of Assistant City Manager Jim Stinson and Sanitation Department Superintendent Alejandro Del Bosque. Appellants contend that they are not limited to a claim under the Act because the City's activities constitute a proprietary function. The issue is whether the City's acts or omissions were governmental or proprietary functions.

The order granting partial summary judgment does not specify the grounds upon which the trial court relied. Therefore, the judgment will be affirmed if any theory advanced by the City is meritorious. *Carr,* 776 S.W.2d at 569.

■ A municipality is immune from liability for its torts in performance of governmental functions except as provided by statute or the Constitution. Under the Texas Tort Claims Act, governmental functions are defined as those functions that are enjoined on a municipality of law and are given by the State as part of the state's sovereignty in the interest of the general public. TEX. CIV.PRAC. & REM.CODE ANN. § 101.0215(a); *Abercrombie Interests v. City of Houston,* 830 S.W.2d 305 (Tex.App.—Corpus Christi 1992, writ denied). "When a municipality acts, but not in connection with duties imposed upon it under powers conferred to it as

a legal agency of the State, or as the representative of the State's sovereignty, its acts are proprietary, and it is liable for torts committed by its officers or agents in performing them." *Abercrombie*, 830 S.W.2d at 309.

Proprietary functions are those functions which a city may, in its discretion, perform in the best interest of the city's inhabitants and which are intended primarily for the private advantage and benefit of persons within the corporate limits of the municipality, as distinguished from that of the general public. *Pontarelli Trust v. City of McAllen*, 465 S.W.2d 804 (Tex.App.—Corpus Christi 1971, no writ); TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(b). Those functions include, but are not limited to: (1) the operation and maintenance of a public utility; (2) amusements owned and operated by the municipality; and (3) any activity that is abnormally dangerous or ultrahazardous. TEX.CIV.PRAC. & REM.CODE § 101.0215(b).

■ The Texas Tort Claims Act contains a nonexhaustive list of activities that fall within a municipality's governmental functions. Section 101.0215(a)(6) provides as follows:

A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

(6) garbage and solid waste removal, collection, and disposal.

*See City of Houston v. George*, 479 S.W.2d 257 (Tex.1972) (City immune from liability arising from boy drowning in hole used for garbage disposal, held as governmental function); *Schneider v. City of Cuero*, 749 S.W.2d 614 (Tex.App.—Corpus Christi 1988, writ denied) (City's operation of landfill is governmental function); *C & C Constr. Co. v. City of Plainview*, 428 S.W.2d 108 (Tex.Civ. App.—Amarillo 1968, writ ref'd n.r.e.) (City's use of caliche pit for garbage disposal held a purely governmental function). Merely because a municipality's action or omission falls within the list of governmental as opposed to proprietary functions does not mean that municipal immunity is waived, as further analysis under the Act, particularly §§ 101.021–101.022, is required to determine potential liability. *McKinney v. City of Gainesville*, 814 S.W.2d 862, 865 (Tex.App.—Fort Worth 1991, no writ).

In the instant case, the City moved for partial summary judgment on the limited issue of whether appellants' claims fell within the purview of the Texas Tort Claims Act. By so doing, the City sought to limit any potential liability and not to invoke complete immunity from suit. We will review the summary judgment evidence accordingly.

Appellants concede that the municipal activity of garbage collection is governmental, but argue that the issue is the ownership and not the use of the caliche pit. Appellants contend that the City failed to use the pit for its intended purpose when purchased, *i.e.*, as a landfill, and has admitted using the pit exclusively for its citizens. That the pit was used exclusively for the private advantage and benefit of the citizens of McAllen, appellants argue, makes the activity a proprietary function. Alternatively, appellants contend that the City can, at best, claim only a dual use of the caliche pit, both proprietary and governmental, and that such mixture of functions precludes the required finding that the activity was exclusively governmental. Therefore, appellants contend, they are not limited to a maximum recovery of $250,000 under the Texas Tort Claims Act.

Garbage and solid waste removal, collection and disposal have long been considered a governmental rather than a proprietary function. *George*, 479 S.W.2d at 258; *Schneider*, 749 S.W.2d at 616; TEX.CIV.PRAC. & REM. CODE § 101.215(a)(6). The record reflects that the City used the caliche pit as a place to dump and burn brush and palm trees collected from residents of the City. Section 361.003 of the Texas Health and Safety Code provides, in relevant part, as follows:

§ 361.003 *Definitions*

(23) "Municipal solid waste" means solid waste resulting from or incidental to municipal, community, commercial, institutional, or recreational activities, and in-

cludes garbage, *rubbish,* ashes, street cleanings, dead animals, abandoned automobiles, and other solid waste other than industrial solid waste. (Emphasis added).

(34) "Rubbish" means nonputrescible solid waste, excluding ashes, that consists of: (A) combustible waste materials, including paper, rags, cartons, wood, excelsior, furniture, rubber, plastics, yard trimmings, leaves, and similar materials.

(37) "(S)olid waste" means garbage, *rubbish,* refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, *municipal,* commercial, mining, and agricultural operations and from community and institutional activities.... (Emphasis added).

In addition, the disposal of solid waste is enjoined on municipalities by law to be exercised in the interest of the general public. *See* TEX.HEALTH & SAFETY CODE § 363.002 (Vernon 1992). A municipality is required to develop a local solid waste management plan in accordance with the Code. TEX.HEALTH & SAFETY CODE § 363.063(a). The control of solid waste collection and disposal is the responsibility of local governments and public agencies. TEX.HEALTH & SAFETY CODE § 363.003(11) (Vernon Supp.1994).

The fact that the city's disposal of solid waste inures to the advantage and benefit of its citizens is, by itself, not determinative of the activity as governmental or proprietary. *See Sarmiento v. City of Corpus Christi,* 465 S.W.2d 813 (Tex.App.—Corpus Christi 1971, no writ). *See also Pontarelli Trust,* 465 S.W.2d at 809–10.

Appellants did not allege in their pleadings that the City was ever engaged in a proprietary function. *See Pontarelli Trust,* 465 S.W.2d at 809–10. They did not allege that the City maintained or exercised any control over the dirt mounds or other barrier around the pit. Instead, appellants alleged in their original petition that Hidalgo County exercised control over the public road adjacent to the pit and had the duty to inspect, maintain, improve, work and/or repair the road and that Hidalgo County had removed or reduced the size of the dirt mounds and had failed to erect any warning signs along the roadway. Appellants alleged that the County had a high duty of care to protect the users of the road from the dangers of the caliche pit. Once the County was nonsuited, any and all proprietary actions alleged by the appellants were deleted from their amended pleadings.

We find no merit in appellants' alternative contention that the City is required to prove that the pit was not abnormally dangerous or ultrahazardous, thereby exposing the City to liability under § 101.0215(b)(3). Appellants contend that, although solid waste disposal may be a governmental function, the ownership and maintenance of the caliche pit (fencing and maintaining of an excavation adjacent to and in the road right-of-way) is abnormally dangerous and ultrahazardous. Appellants provide no supporting authority for this contention, and we find none.

Appellants further attempt to distinguish between the ownership of the pit and the activity of solid waste removal. Appellants, relying on *Delaney v. University of Houston,* 835 S.W.2d 56 (Tex.1992) and *LeLeaux v. Hamshire–Fannette Indep. School Dist.,* 835 S.W.2d 49 (Tex.1992), contend that a "nexus" between the disposal of solid waste and the alleged negligence of not having a proper barrier is required. In these two cases, the supreme court examined the required "nexus" between the injury and the claimed activity in determining the issue of causation. *Delaney* and *LeLeaux* are, therefore, inapposite.

■■■ We find sufficient uncontroverted evidence in the record to show that the activity of owning and operating a caliche pit for municipal solid waste disposal is an exclusively governmental function. We hold that appellants' claims fall within the purview of the Texas Tort Claims Act. Appellants' second point of error is overruled.

The trial court's order granting the City's motion for partial summary judgment is AFFIRMED. The trial court's order granting the City's motion for summary judgment is

REVERSED and the case is REMANDED to the trial court for further proceedings.