

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00088-CV

---

Texas Tech University Health Sciences Center–El Paso, Appellant

v.

Philip E. Mohrman, Individually and as
Representative of the Estate of Robert K. Borst, Appellee

---

On Appeal from the 34th District Court
El Paso County, Texas
Trial Court No. 2019DCV4614

---

## MEMORANDUM OPINION

Texas Tech University Health Sciences Center–El Paso (TTUHSC) appeals the trial court's order denying its plea to the jurisdiction and motion to dismiss in this medical negligence suit brought by Appellee Philip E. Mohrman, Individually and as Representative of the Estate of Robert K. Borst. Because TTUHSC did not conclusively show that Mohrman failed to comply with the written notice requirement under § 101.101(a) of the Texas Tort Claims Act (TTCA), we affirm.

# I. BACKGROUND

Mohrman's husband, Robert K. Borst, was treated by TTUHSC physicians while hospitalized at University Medical Center (UMC) in November and December 2017. According to Mohrman, after Borst suffered an adverse reaction to Bactrim, he was given more of it, resulting in complications that led to his death.

In November 2019, Mohrman filed this medical negligence suit against TTUHSC and UMC. In its answer, TTUHSC asserted an affirmative defense that Mohrman "failed to give proper written notice and/or TTUHSCEP did not have actual notice of this claim as required under [TTCA] § 101.101." TTUHSC later filed a plea to the jurisdiction and motion to dismiss, arguing it was entitled to receive notice of Mohrman's claim not later than six months after the incident giving rise to the claim, but received no such notice until February 2019—more than a year after Borst's hospitalization—when it learned of Mohrman's claim in an email exchange with his counsel. Attached to TTUHSC's motion was an affidavit by its Associate General Counsel William Webster, who averred that he "conducted a complete and thorough search of all appropriate files and records . . . and made inquiries of the appropriate offices and individuals" and "f[ou]nd no record that any tort claim notice [from Morhrman] was ever received" before February 2019.

In his response to TTUHSC's motion, Mohrman asserted he had provided written notice as required by § 101.101(a) and attached a declaration from John G. Mundie, his former counsel, who averred that he had sent notice letters to both TTUHSC and UMC.[1] Mundie's declaration stated that the letters were "sent to the recipients at the addresses indicated using the United States Postal Service," and reads in relevant part:

---

[1] UMC acknowledged receipt of Mundie's letter and is not a party to this interlocutory appeal.

Attached to this declaration are true and correct copies of the notice letters dated April 5, 2018, addressed to Dean Richard Lange of Paul Foster School of Medicine, Texas Tech University Health Sciences Center–El Paso, and the Administrator of University Medical Center (UMC) of El Paso.

These notice letters were prepared under my direction as counsel for Plaintiff Philip Mohrman in connection with the claim of medical negligence brought on behalf of the Estate of Robert Borst.

The letters were sent to the recipients at the addresses indicated using the United States Postal Service on or about April 5, 2018, in accordance with customary and accepted practices for mailing legal correspondence.

The letter from Terry Sanchez, Risk Manager at University Medical Center, dated May 8, 2018, is a true and correct copy acknowledging receipt of the April 5, 2018, notice letter to UMC and is also attached to this declaration.

Attached to Mundie's declaration were two identical notice letters dated April 5, 2018. The letters, addressed to TTUHSC and UMC, set forth Mohrman's claim:

### Notice of Claim, CPRC 101.101

Dear Sirs:

I represent Philip Mohrman, surviving spouse and Personal Representative of the Estate of Robert Borst, and hereby submit his notice of claim to each of you for his claim of medical malpractice by nurses at University Medical Center and physicians at Texas Tech regarding the inappropriate ordering and administering to Mr. Borst the antibiotic Bactrim after the patient was known to have an adverse reaction (kidney failure) from a previous dosing of Bactrim. (On or about November 27, 2017). The second dosing of Bactrim occurred during the above hospitalization.

The injury to Mr. Borst was kidney failure, which was a proximate cause of his death.

After a hearing, the trial court denied TTUHSC's plea to the jurisdiction and motion to dismiss. TTUHSC timely filed this interlocutory appeal under Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing interlocutory appeal of order granting or denying plea to jurisdiction filed by governmental entity).

## II. ISSUES ON APPEAL

In two issues, TTUHSC argues that the trial court erred in denying its plea and motion

3

because Mohrman: (1) failed to "provide [TTUHSC] timely written notice of [his] claims as required by [TTCA] § 101.101(a)"; and (2) failed to "establish [TTUHSC] had actual notice of [his] claims as required by [TTCA] § 101.101(c)." Because the first issue is dispositive of this appeal, we address only that issue.

## III. STANDARD OF REVIEW

TTUHSC is a state institution, thus sovereign immunity protects it from suit and liability except where waived by the Texas Legislature. *Tex. Tech Univ. Health Sciences Ctr.–El Paso v. Niehay*, 671 S.W.3d 929, 935 (Tex. 2023). The TTCA waives sovereign immunity for certain misuses of tangible personal property, including misuse of medication. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) ("A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable[.]"); *see also Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 514 (Tex. 2019) ("[W]e have indicated that the use of medication that is improper under the circumstances and causes harm constitutes negligent 'use' under the [TTCA]."). Under § 101.101, a governmental entity is entitled to receive notice of such a claim within six months after the incident giving rise to it. Tex. Civ. Prac. & Rem. Code Ann § 101.101(a) ("A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred."; "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident.").

Statutory prerequisites to suit—including the notice requirement under § 101.101—implicate subject-matter jurisdiction over claims asserted against governmental entities. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) ("[A] statutory prerequisite to suit,

whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity."); *State v. Navarrette*, 656 S.W.3d 681, 691 (Tex. App.—El Paso 2022, no pet.) ("One jurisdictional prerequisite to suit under the [TTCA] is compliance with the statutory notice requirement.").

Subject-matter jurisdiction may be challenged through a plea to the jurisdiction or motion to dismiss. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) ("[S]overeign immunity . . . 'may be raised by a plea to the jurisdiction, as well as by other procedural vehicles[.]'") (citing *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009)). Such a plea or motion may "challenge[] 'whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case,' 'the *existence* of those very jurisdictional facts,' or both." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (emphasis in original) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)).

When, as here, the existence of jurisdictional facts is challenged, "we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Tex. Health & Human Services Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023). This analysis involves a question of law which we review de novo and mirrors our evaluation of a traditional motion for summary judgment. *Id*. at 280–81. A party seeking relief based on an affirmative defense bears the burden of conclusively establishing that defense. *See Taylor v. Tolbert*, 644 S.W.3d 637, 645 (Tex. 2022) (discussing summary judgment practice); *see also Pope*, 674 S.W.3d at 280–81 (holding that plea to jurisdiction practice mirrors summary judgment practice). If the governmental entity satisfies the initial traditional summary judgment burden of proof, the burden shifts to the plaintiff to show that a fact issue exists. *Id*. at 281.

As in the summary judgment context, we "take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor," but we "cannot disregard evidence necessary to show context," and "cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Id.*

## IV. DISCUSSION

Under § 101.101(a), a governmental entity is "entitled to receive notice of a claim . . . not later than six months after the day that the incident giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a); *see also Colquitt v. Brazoria Cnty.*, 324 S.W.3d 539, 541 (Tex. 2010) (per curiam) (construing § 101.101(a) to require "formal, written notice").

### A. Mohrman's position

Here, Mohrman argues that he complied with § 101.101(a) because his counsel, John Mundie, "sent formal written notice on April 5, 2018, well within six months of Mr. Borst's December 2017 injury and death," and "[a]lthough [TTUHSC] contends it has no record of receiving the letter, this does not conclusively negate notice." That is, according to Mohrman, because his counsel "submitted a sworn declaration with the notice letter attached and verified the date of mailing," the evidence of notice was "more than sufficient to create a fact issue." At the hearing, Mohrman argued that he was relying on "long-standing case law" holding that "[w]hen a letter properly addressed and postage prepaid is mailed, there exists a presumption that the notice was duly received by the addressee," including *Thomas v. Ray*, 889 S.W.2d 237 (Tex. 1994).

### B. TTUHSC's position

TTUHSC responds that "[m]erely stating that the letter was sent [by Mundie] does not demonstrate that [it] was received by [TTUHSC]," citing *Needham Fire & Rescue Co. v. Balderas*, No. 14-16-00211-CV, 2017 WL 1416219 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.). Like Mohrman, the plaintiff in *Balderas* sought to establish compliance with

6

§ 101.101(a) through her counsel's sworn statement that he "drafted, placed in an envelope, stamped and mailed [a notice] letter to [the defendant]." 2017 WL 1416219, at *2. And like TTUHSC, the defendant in *Balderas* rebutted this evidence with its representative's sworn statement that a search was conducted, no notice letter was found, and in fact no notice was timely received. *Id*. at *2–3. Observing that "[a]ccording to the plain language of the TTCA, it is the date that the governmental unit receives notice—not when the claimant sends notice—that is controlling," *Balderas* concluded that because the plaintiff's affidavit "ma[de] no claim that notice was *received*," it created "no fact issue that [the defendant] received notice." *Id*. at *3 (emphasis in original).

### C. Analysis

#### (1) The *Balderas* approach

We decline to adopt *Balderas*'s reasoning in this case. When addressing that the date the notice is received is controlling, the court in *Balderas* cites *Adams v. City of Dallas*, No. 05–14–1143–CV, 2015 WL 7280893, at *2 (Tex. App.—Dallas Nov. 18, 2015, no pet.) (mem. op.). 2017 WL 1416219, at *3. But *Adams* emphasized that the date of receipt is controlling under § 101.101(a) because there, the gap between the date of the notice (January 27) and the due date for its receipt (January 28) was only one day. 2015 WL 7280893, at *2. Neither *Balderas* nor the present case has that temporal proximity issue between the time the notice was allegedly sent and the notice due date: in *Balderas*, the gap between date of notice (April 30) and due date (August 5) was over three months, 2017 WL 1416219, at *2, and here, according to TTUHSC, the gap between date of notice (April 5) and due date (May 30) was nearly two months.

We further note that *Balderas*'s reasoning has only been followed in a single case. *See City of San Antonio v. Rocha*, No. 04-18-00367-CV, 2018 WL 6517169, at *3 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.) (holding that "the fact that [the plaintiff] sent [a TTCA] notice

7

to the [governmental defendant] is irrelevant," as the date of receipt is controlling under § 101.101). In addition, *Balderas* and *Rocha* appear to conflict with two earlier San Antonio Court of Appeals cases: *Crow v. City of San Antonio*, 294 S.W.2d 899, 903 (Tex. App.—San Antonio 1956), which held that evidence that the notice of a tort claim against the city was properly placed in mail was "some evidence" to support jury finding notice was received by city), *rev'd on other grounds*, 301 S.W.2d 628, 629 (1957); and *Pan Am. Bank of Brownsville v. Nowland*, 650 S.W.2d 879 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.), which held that "[d]irect testimony that a letter was properly enclosed in an envelope which was correctly stamped, addressed and deposited in the mail gives rise to a rebuttable presumption that it was duly received." *Id.* at 884 (citing *Southland Life Insurance Co. v. Greenwade*, 159 S.W.2d 854, 856–57 (1942)), *disapproved of on other grounds*, *Crimmins v. Lowry*, 691 S.W.2d 582 (Tex. 1985).

### (2) The common-law mailbox rule

Under § 101.101(a), "[a] governmental unit is entitled to receive notice of a claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a). While this language makes clear that the timeliness of the notice is determined by the date it is received, and not the date it was sent, neither § 101.101(a) nor any other provision of the TTCA addresses the separate issue of whether evidence that a written notice was sent can give rise to a presumption or create a fact issue as to its receipt—in other words, whether the mailbox rule might apply.[2]

---

[2] The mailbox rule has been part of Texas common law since at least 1894, *see Manhattan Life Ins. Co. v. Fields*, 26 S.W. 280, 281–82 (Tex. Civ. App.—San Antonio 1894, no writ) ("When a letter is properly addressed, prepaid, and mailed, the presumption will be that the person to whom it was written received it[.]"); has been cited approvingly by the Texas Supreme Court, *see Tex. Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 92 (1961) ("When there is positive testimony that a letter has been enclosed in an envelope which is correctly stamped and addressed and is deposited in the mail, there is a rebuttable presumption that it was duly received."); and continues to be in force today, *see, e.g.*, *Unifund CCR, LLC v. Rice*, No. 14-21-00386-CV, 2022 WL 17099874, at *3 (Tex. App.—Houston [14th Dist.] Nov. 22, 2022, no pet.) (mem. op.) ("A presumption of receipt arises when a party presents evidence that a document was placed in the United States mail with the proper address and sufficient postage."); *McEndree v. Volke*, 634 S.W.3d 413,

In a footnote, *Balderas* addresses this separate issue, citing *Tex. Dep't of State Health Servs. v. Gonzalez*, No. 13–14–00259–CV, 2014 WL 7205332 (Tex. App.–Corpus Christi Dec. 18, 2014, no pet.) (mem. op.) as having "reject[ed the] argument that [the] mailbox rule applied to [a] claim brought under the TTCA." 2017 WL 1416219, at *3 n.3. However, *Gonzalez* expressly limited its analysis to the mailbox rule codified in Texas Rules of Civil Procedure 5 and 21a, which the court concluded were irrelevant because these rules apply only to documents required to be filed in court, and a § 101.101 notice is not such a document:

> [T]he 'mailbox rule' to which Gonzalez refers is embodied in rules of civil procedure 5 and 21a, which provide that court filings and service of process will be considered timely accomplished if they are placed in the mail to the proper clerk or party by the date of the relevant deadline. *See* Tex. R. Civ. P. 5, 21a. The rules of civil procedure 'shall govern the procedure in the justice, county, and district courts of the State of Texas in all actions of a civil nature. . . .' Tex. R. Civ. P. 2. The notice required by section 101.101 of the TTCA is not a document required to be filed in court. Thus, we cannot conclude that the 'mailbox rule'—i.e., rules 5 and 21a—apply to Gonzalez's notice of claim in this case.

2014 WL 7205332, at *4.[3]

Neither *Balderas* nor *Gonzalez* mention the common-law mailbox rule. Nor do the parties here.[4] However, because § 101.101's notice requirement is jurisdictional, *Navarrette*, 656 S.W.3d

421 (Tex. App.—Eastland 2021, no pet.) (same); *see also Texas Dep't of Transp. v. Bagg*, No. 08-23-00148-CV, 2024 WL 4533568, at *8 n.6 (Tex. App.—El Paso Oct. 21, 2024, pet. denied) (mem. op.) (implying that mailing of letter was some evidence of its receipt).

[3] In addition to relying on *Gonzalez*, *Balderas* further reasons that "the TTCA's more specific requirement of 'receipt' to invoke a waiver of sovereign immunity controls over the more general requirement of 'service' found in Texas Rules of Civil Procedure 21 and 21a," and "[t]hus we do not apply Rule 21a's presumption that a mailed notice was received" under § 101.101(a). *Needham Fire & Rescue Co. v. Balderas*, No. 14-16-00211-CV, 2017 WL 1416219, at *3 n.3 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.). We need not and do not address this issue since we agree with *Gonzalez* that a § 101.101(a) notice is not required to be filed in court, thus Rules 21 and 21a do not govern such a notice in the first place. *See Tex. Dep't of State Health Servs. v. Gonzalez*, No. 13–14–00259–CV, 2014 WL 7205332, at *4 (Tex. App.–Corpus Christi Dec. 18, 2014, no pet.) (mem. op.) (quoted above); *see also* Tex. R. Civ. P. 21a(e) ("The party or attorney of record shall certify to the court compliance with this rule in writing over signature and *on the filed instrument*" (emphasis added).); Tex. R. Civ. P. 21a(a) (providing "[m]ethods of [s]ervice" for "[e]very notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21 [i.e., '[e]very pleading, plea, motion, or application to the court for an order . . . unless presented during a hearing or trial'], other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provided in these rules").

[4] Although at the trial court hearing Mohrman cited *Thomas v. Ray*, 889 S.W.2d 237 (Tex. 1994) as holding that

at 691 ("One jurisdictional prerequisite to suit under the [TTCA] is compliance with the statutory notice requirement."), we are obligated to consider whether the common-law mailbox rule applies to Mohrman's notice, even if we must do so sua sponte. *Univ. of Tex. Rio Grande Valley v. Oteka*, 715 S.W.3d 734, 744 (Tex. 2025) ("[C]ourts always have the duty to ensure that subject-matter jurisdiction—their own and that of the lower courts—is secure.") (citing *S.C. v. M.B.*, 650 S.W.3d 428, 449 (Tex. 2022)); *Freedom Communications, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) ("[W]e must consider our jurisdiction, even if that consideration is sua sponte.").

TTUHSC argues neither that Mundie's notice letter (quoted above) lacked any information required by § 101.101(a), nor that Mundie's declaration (also quoted above) lacked any information required to give rise to a presumption or create a fact issue as to receipt under the mailbox rule. While TTUHSC did submit Webster's affidavit denying that TTUHSC received Mundie's letter, this evidence merely rebutted the presumption of receipt and did not make the underlying evidence disappear. That is, rather than vanishing, the underlying evidence—i.e., of the mailing of Mundie's letter—created a fact issue as to whether it was received by TTUHSC, as explained in *Crow v. City of San Antonio*:

> It is true that when the addressee of a letter testifies that he did not receive the letter the legal presumption [of receipt] does disappear, but the evidence upon which it was based does not disappear, and the evidence remains to be weighed by the trier of facts in determining whether the notice was in fact received.[5]

---

"[w]hen a letter properly addressed and postage prepaid is mailed, there exists a presumption that the notice was duly received," *Thomas* involved the presumption of receipt created under Rule 21a and not the common law mailbox rule. *See* 889 S.W.2d at 238.

[5] The Texas Supreme Court has held that the law works in a reciprocal way when the sending rather than receiving of a written notice is controlling. In *Sudduth v. Commonwealth Cnty. Mut. Ins. Co*, the insurance policy at issue provided that "[t]his policy may be canceled . . . by mailing to the insured . . . written notice stating when not less than ten days thereafter such cancelation shall be effective," and "[t]he mailing of notice as aforesaid shall be sufficient proof of notice." 454 S.W.2d 196, 196 (Tex. 1970). The insurance company submitted an affidavit stating that a cancellation notice was mailed to the insured on April 11, cancelling the policy as of April 22, and the insured submitted an affidavit stating that she had received no such notice as of May 7, the date of the event for which she sought coverage, and first learned of the cancellation on or about May 21, when the insurance company sought to return her prior premium payments. *Id*. at 197. After noting that a policy like the one before it "may be cancelled by the proper mailing of notice . . . even though the notice is never received," *id*. at 196, the Supreme Court nevertheless concluded that the insured's

*Crow v. City of San Antonio*, 294 S.W.2d 899, 901–902 (Tex. App.—San Antonio 1956), *rev'd on other grounds*, 301 S.W.2d 628, 629 (1957) ("We agree with the holding of the Court of Civil Appeals on the question of notice[.]"); *see also Kelly v. Brenham Floral Co.*, No. 01-12-01000-CV, 2014 WL 4219448, at *3 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.) ("The mere denial of receipt is sufficient to rebut the presumption [of receipt under the mailbox rule]; however, the denial is not conclusive and merely presents a fact issue for the factfinder.") (citations omitted).[6]

---

affidavit raised a fact question as to whether the cancellation notice was mailed, holding that "proof of nonarrival ordinarily constitutes some evidence that a letter was not mailed." *Id*. at 198. In reaching this result, the Court relied on 9 Wigmore on Evidence, 3rd ed. 1940, § 2519, which reads in part:

> Whether the letter was Mailed, becomes often the issue under the substantive law; for example, in charging an indorser of a negotiable instrument with a notice of the notarial protest, or in charging an insured with notice of a premium due; here the actual receipt of the letter becomes immaterial; the mailing suffices. But suppose that the addressee testifies in Denial of the Receipt? If this denial be believed, then is not the non-arrival of the letter some evidence that it was never mailed? The presumption above rests upon the supposed uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody; if therefore the efficiency is operating, does not the non-arrival of an alleged letter indicate that such a letter was never given into the postal custody? Add to this, that the testimony to mailing comes usually from the mouth of persons who are vitally self-interested in proving the fact of mailing, E.g., a bank cashier who as notary mails notice of protest of the bank's negotiable instruments, or the agent of an insurer seeking to avoid a liability under the policy?

> If therefore the addressee's testimony (also an interested witness) be believed, the non-arrival of such a letter is some evidence that no such letter was mailed; in short, it becomes essentially a question which testimony the jury will believe; therefore the case may go to the jury on that issue.

*Id*. at 197; *see also Office of the Attorney Gen. v. Scott*, No. 02-14-00316-CV, 2015 WL 4043259, at *3 (Tex. App.—Fort Worth July 2, 2015, no pet.) (mem. op.) ("[A] plaintiff's testimony that she did not receive a letter created a genuine issue of material fact, sufficient to defeat a motion for summary judgment, that the defendant did not send the letter[.]") (citing *Sudduth*, 454 S.W.2d at 197–98)).

[6] Other evidentiary presumptions work the same way, i.e., if rebutted, they disappear, leaving a fact issue in their wake. *See Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993) ("The presumption [that an adequate product warning will be heeded] is subject to the same rules governing presumptions generally"; i.e., "[i]ts effect is to shift the burden of producing evidence to the party against whom it operates. Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not to be weighed or treated as evidence."; "The evidence on the issue is then evaluated as it would be in any other case . . . . The facts upon which the presumption was based remain in evidence, of course, and will support any inferences that may be reasonably drawn from them.") (internal citation and quotation marks omitted); *see also Matter of Marriage of Crist*, 661 S.W.3d 623, 629 (Tex. App.—El Paso 2023, no pet.) ("Once Jill successfully rebutted the presumption [that an interspousal transfer involves a gift], the trial court, as the fact finder, was free to make a credibility determination between the conflicting evidence.").

Governmental entities are not exempt from evidentiary presumptions. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex. 1988) ("We consider it established that governmental units litigate as any other party in Texas courts and must observe the same rules that bind all other litigants, which include the laws and rules governing pleadings

Accordingly, we conclude that (1) Mundie's sworn statement that notice of Mohrman's claim was properly mailed to TTUHSC gave rise to a presumption that TTUHSC received the notice in due course; (2) Webster's sworn statement that TTUHSC did not receive the notice rebutted this presumption; and (3) a fact issue remains as to whether TTUHSC actually received timely notice of Mohrman's claim under § 101.101(a).

In the absence of evidence conclusively showing that Mohrman failed to comply with § 101.101(a)'s written notice requirement, we conclude that TTUHSC was not entitled to relief under its § 101.101 affirmative defense and the trial court thus correctly denied its plea to the jurisdiction and motion to dismiss. *Taylor*, 644 S.W.3d at 645. TTUHSC's first issue is overruled.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's order denying TTUHSC's plea to the jurisdiction and motion to dismiss and remand this case for further proceedings consistent with this opinion.

LISA J. SOTO, Justice

December 22, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

and burden of proof."); *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 498 (Tex. App.—El Paso 1996, no writ) ("[I]t is well established that governmental entities . . . must observe the laws and rules governing pleadings and proof."); *see also McKinney v. Freestone Cnty.*, 291 S.W. 529, 531 (Tex. Comm'n App. 1927) ("It is thoroughly settled that when the state or any arm of sovereignty comes into the court, it is subject to all the rules of evidence usually applicable to ordinary parties, including th[e] presumption [of payment after long lapse of time.]"); *id*. ("The government is subjected to the same rules respecting the burden of proof, the quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like action by an individual.") (citing *United States v. Stinson*, 197 U. S. 200 (1905)).